## Court of Appeals.

January, 1898.

### PEOPLE v. JOSHUA S. HELMER.

1. COURT OF APPEALS—JURISDICTION.

   The jurisdiction of the court of appeals is limited to the review of questions of law only, and no unanimous decision of the appellate division that there is evidence supporting or tending to sustain a verdict not directed by the court can be reviewed by this court.

2. INDICTMENT—SUFFICIENCY.

   An indictment is sufficient if the act or omission, charged as a crime, is plainly and concisely set forth with such a degree of certainty as to enable the court to pronounce judgment according to the right of the case. No indictment is insufficient by reason of any imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant, upon the merits.

3. CRIMINAL LAW—EVIDENCE.

   Evidence, received without objection or exception, presents no question which can be reviewed in the court of appeals.

4. SAME—CHARGE.

   A portion of a charge, the possible effect of which is to convey the idea that the general term has determined the precise question which is before the jury, is improper.

5. SAME—HARMLESS.

   Where a charge is erroneous, the verdict must be set aside, unless it is apparent that the error did not and could not have affected the verdict. It is not for the defendant to show how he was injured, but it rests with the prosecution to show that no possible injury could have arisen from the error.

APPEAL from a judgment of the appellate division of the supreme court in the fourth judicial department, which affirmed a judgment of a court of general sessions, convicting the defend-

VOL. XIII—1

ant of exhibiting false books to one of the bank examiners of the state.

The defendant was indicted at a court of oyer and terminer held in and for that county in April, 1894. At the time of the alleged offense he was president of the Mechanics' Bank of Lockport, which was duly organized under the laws of this state, and was in general charge of its affairs. Among other books kept in the bank was one known as the tickler or cash book, which purported to show correctly the cash on hand. at the close of business on each day. B. S. W. Clark was a bank examiner duly authorized and appointed to investigate the affairs of that bank. On the morning of the twenty-first of September, 1893, Clark, as such examiner, appeared at its banking office for that purpose. The defendant was present and was informed by the bank examiner of the purpose of his visit and of his desire to count the cash before the bank opened for business. The books were thereupon presented, including the tickler or cash book, and the examination commenced. The defendant was present the most of the time until it was concluded.

John G. Milburn, Tracy C. Becker and Eugene M. Ashley, for appellant.

Abner T. Hopkins and P. F. King, for respondent.

MARTIN, J.—The jurisdiction of this court is limited to the review of questions of law only, and no unanimous decision of the appellate divison that there is evidence supporting or tending to sustain a verdict not directed by the court can be reviewed by the court of appeals. Const. art. 6, § 9 ; Szuchy v. Hillside Coal & Iron Co., 150 N. Y. 219 ; People ex rel. v. Barker, 152 id. 417 ; Harroun v. Brush Electric Light Co., 152 id. 212 ; People v. Ledwon, 153 id. 10, 15. Consequently no questions of fact, or questions relating to the sufficiency of the evidence, can be reviewed on this appeal.

The indictment was based upon the provisions of section 592 of the Penal Code, which,.so far as material, provide that an officer of a corporation, who knowingly exhibits a false book to any public officer authorized by law to investigate its affairs,

with intent to deceive such officer in respect thereto, is punishable by imprisonment not to exceed ten years. At the close of the testimony the defendant moved to dismiss the indictment upon the ground that it did not charge a crime.. This motion was denied and the defendant excepted. He now contends that the indictment was defective in failing to allege that the tickler or cash book was exhibited by the defendant to the bank examiner with intent to deceive him *in respect thereto.* The indictment in effect charged that the defendant, as president and director of the Merchants' Bank of Lockport, at the time named, feloniously, willfully, wrongfully and knowingly presented, exposed and exhibited its cash book or tickler to B. S. W. Clark, a public officer duly authorized and commissioned to investigate the affairs of that bank, with the intent to deceive such public officer, contrary to the form of the statute in such case made and provided. The only omission claimed is of the words "in respect thereto." While it may be that under the strict and technical rules of the common law this indictment might be regarded as defective, yet, under the liberal procedure established by our statutes we think it was sufficient. Under the present practice, an indictment is sufficient if the act or omission, charged as a crime, is plainly and concisely set forth with such a degree of certainty as to enable the court to pronounce judgment according to the right of the case, and no indictment is insufficient by reason of any imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant, upon the merits. Nor does any error or mistake therein render it invalid, unless it actually prejudices or tends to prejudice the defendant in respect to a substantial right. Code Criminal Procedure, §§ 284, 285, 684. The purpose of an indictment is to identify the charge against a defendant, so that his conviction or acquittal may inure to his subsequent protection, and to apprise him of the nature and character of the offense charged and of the facts which may be proved, so as to enable him to prepare his defense. When tested by these principles it is obvious that the indictment was sufficient, as there was no defect which affected any substantial right of the defendant. It fairly apprised him of the facts to be proved

against him, and so clearly identified the crime charged that a judgment would protect him from a subsequent conviction. Hence, we are of the opinion that the defendant's exception to this ruling was not well taken.

The defendant's counsel also insists that the court erred in admitting in evidence the quarterly report of the Merchant's Bank, showing its condition on the nineteenth day of September, 1893, which was signed and verified by the defendant. It was proved upon his cross-examination, and was obviously admissible to contradict his testimony. As it was, however, received without objection or exception, it presents no question which can be reviewed upon this appeal.

On the trial the questions most seriously litigated were whether certain entries in the tickler or cash book were false to the knowledge of the defendant, and whether, with that knowledge, he exhibited it to the bank examiner. The evidence to establish these facts was to some extent circumstantial. In submitting the case to the jury, the learned trial judge, after charging that there was no direct evidence to show that the defendant exhibited this book to the bank examiner, and that he was in and about the bank and knew the purpose of the visit of the examiner, then added: "And as the court at general term had said, in this case, that was sufficient to satisfy the jury that there was an inspection or presentation of the books to the examiner." That part of the charge was excepted to by the defendant, and this exception presents the only serious question in the case. The possible effect of that portion of the charge was to convey the idea that the general term had determined the precise question which was before the jury. It is manifest that this statement was improper, as the question whether the defendant had knowingly exhibited false books to the examiner was purely one of fact to be determined by the jury from the evidence before it, unprejudiced by any statement as to what another court might have said upon that subject. The obvious consequence of that portion of the charge was to create a tendency on the part of the jury to rely upon what it may have understood to have been the decision of the general term, rather than upon the evidence. While it may be that it had no such effect,

still, as such a result may have been produced, it cannot be said that the error was harmless. Where a charge is erroneous the verdict must be set aside, unless it is apparent that the error did not and could not have affected the verdict. It is not for the defendant to show how he was injured by it, but it rests with the prosecution to show that no possible injury could have arisen from the error. Greene v. White, 37 N. Y. 405; Clarke v. Dutcher, 9 Cow. 674; Stokes v. People, 53 N. Y. 164; People v. Corey, 148 id. 476; People v. Strait, 154 id. 165; People v. Koerner, 154 id. 355. We are of the opinion that the defendant's exception to the charge was well taken, and as we cannot say that it could by no possibility have prejudiced the defendant, it follows that the judgment must be reversed and a new trial granted.

O'BRIEN, J. (dissenting).— The defendant was convicted of a felony under section 592 of the Penal Code, upon an indictment charging him with having exhibited to an examiner of the bank department a false book concerning the condition of a state bank, of which he was the president, and which subsequently failed. On the argument of the appeal in this court his counsel insisted that there was no evidence whatever in the case upon which the issues of fact could properly have been submitted to the jury. On the part of the people this contention is answered by the suggestion that whether there was evidence or not this court has no jurisdiction to look into the record for the purpose of ascertaining that fact, or to examine such a question when the appellate division has affirmed the conviction by a unanimous vote, as it has in this case. The principal is of so much importance, and the decision of the majority of this court upon the point is such a wide departure from what seems to me to be the law of the case, that I am constrained to dissent from the doctrines of the prevailing opinion, which sustains the contention of the prosecution.

The point is made by the district attorney that when an issue of fact has been joined upon an indictment and a conviction for any offense, not punishable by death, is followed by unanimous affirmance at the appellate division, that this court is de-

prived of all jurisdiction to examine the record to see whether the accused has been convicted upon evidence, or without any evidence whatever. If this proposition be correct, then all appeals to this court in such cases ought to be prohibited, since, if we have no power to examine such a vital and fundamental question, we should not be required to listen to arguments that deal only with the competency or relevancy of questions propounded to witnesses, or with the language in which the trial judge may have instructed the jury. The most important question in a criminal case is whether the accused is innocent or guilty, and that must always depend upon the evidence. But if we must shut our eyes against the record and cannot be permitted to inquire whether, in any case, where the court below is unanimous, any evidence has been produced against the accused then, certainly, all minor questions ought to follow the principal one.

The contention of the learned district attorney practically asserts that in all such criminal cases the most important question of law must be regarded as finally determined by the unanimous decision of the appellate division, and that this court can deal only with questions that are generally insignificant. Since this court is disposed to sustain the contention of the district attorney, that we have no power to inquire whether the defendant was convicted with or without evidence, the reasons for such a conclusion certainly merit some examination. The general ground upon which the conclusion rests is that the power which this court has always exercised, to examine and decide all questions of law in criminal cases that come properly before it, has been withdrawn by force of article 6, section 9, of the Constitution. It is clearly provided in that section that, except where the judgment is of death, the jurisdiction of this court shall be limited to the review of questions of law. But the question before us, whether there is any evidence to sustain the verdict, *is* a question of law, and nothing else. Since the decision of Lord Mansfield in the case of Carpenters' Company v. Hayward, 1 Doug. 360, it is elementary law that the question whether there is *any* evidence is for the court, and whether sufficient evidence, is for the jury. 1 Greenleaf Ev. § 49. When

the trial judge was requested to decide that there was no evidence to submit to the jury, this request raised simply a question of law, and that is the very question that is now before us, but which the court declines to entertain for want of jurisdiction. The nature of the question was stated in this court by Judge Grover in the case of Mason v. Lord, 40 N. Y. 476, in this language: "An appeal to this court can only be taken upon the law. The question then, is, whether finding a fact without any evidence to sustain it is an error of law. The statement of the question would seem to suggest the answer: A finding of facts must always be based upon evidence, and where none is given tending to show an affirmative fact, it is contrary to law to find such fact against a party traversing it. * * * When the alleged error is a finding of fact contrary to the weight of the evidence, it is within the meaning of the code providing for appeals on error of fact, of which this court can take no cognizance. When it is the finding of a fact without any evidence, or the refusal to find a fact proved by uncontroverted evidence, it is a legal error which is available in this court." This court has so often held that such a question is, in its very nature and substance, a purely legal question, that it is idle to pursue such an inquiry. It follows, therefore, that the present Constitution by enacting that the jurisdiction of this court should be confined to questions of law, has not made any new rule in criminal cases. This court never had any jurisdiction to review facts in a criminal case, except in capital cases, and the constitution made no change in the practice in that respect. It will be seen therefore, that the question we are now considering is a question of law and nothing else.

The limitations upon appeals to this court are embraced in three sentences of article 6, § 9, of the Constitution. When these limitations are carefully analyzed it is plain, I think, that they have no application to criminal cases and that they relate wholly to appeals in civil cases. This section of the Constitution provides that, except where the judgment is of death, appeals may be taken as of right to this court, only from judgments or orders entered upon decisions of the appellate division finally determining actions or special proceedings, and from

orders granting new trials on exceptions, where the appellant stipulates that, upon affirmance, judgment absolute shall be rendered against him.

The two provisions to which I have referred clearly point out the cases and questions that may be brought to this court, as well as the tribunal from which the appeal must be taken. The questions must be questions of law. The appeal must come from the appellate division, and only from such judgments and orders described, when claimed as matter of right. The question then is, whether these limitations have any application to this case, or any other criminal case. My brethren think that they do apply to criminal as well as to civil cases, and it is quite evident that they have been greatly influenced in arriving at that conclusion by the fact that, in both of these clauses of the section, judgments of death are mentioned by way of exception. It seems to me that this view is quite misleading. The purpose and intention of the lawmakers in inserting these words of exception are very plain.

But for the exception in the first clause it might be claimed that the jurisdiction of this court to review the facts in a capital case was withdrawn, and in the second clause the exception was clearly intended for no other purpose than to enable the court to continue to entertain appeals in the same class of cases directly from the trial court. In other words, capital cases were excepted from the requirement that appeals must be taken only from the appellate division and on questions of law. It is perfectly plain that the intention was to preserve the jurisdiction of this court in capital cases, just as it was before, from the application of the general words of the Constitution confining jurisdiction to questions of law and to appeals from the appellate division.

Since, in all other criminal cases, appeals could only be made under existing laws from the appellate division and on questions of law, it was not necessary to except them from the general words in order to retain the same jurisdiction over them that we had before. But, singularly enough, the attempt of the framers of the Constitution to preserve the jurisdiction of this court in all criminal cases, just as it had always existed, is now used as an argument to show that they intended to change and limit it.

Words which are obviously words of exception are made to perform the office of words of inclusion, and the argument is made that since capital cases are excepted from the limitations of the Constitution, all other criminal cases must necessarily be included.

I confess I am wholly unable to understand or appreciate the argument against our jurisdiction over all the questions presented by the record in this case which is based upon those words of exception in the section. The office of the exception was to exclude from the limitations the cases excepted. It did not operate to draw any other cases in.

But a little closer analysis of the words of the section will dissipate all doubt derived from a careless reading. It is clear, beyond any dispute, that by the provisions of the section, appeals to this court as matter of right, can be made in three cases only :

(1) Judgments finally determining actions. (2) Final orders in special proceeding. (3) Orders granting new trials upon exceptions where the appellant stipulates that judgment absolute may be rendered in case of affirmance. It is these three classes of appeals that the section regulates and prescribes the powers and duties of this court upon the hearing. When we are forbidden to review any particular question of law, it must be some question embraced in a record before this court in some one of the three cases mentioned, for no other cases can come here under that section as matter of right. Now, if it can be shown that the three classes of cases mentioned in the section are civil cases only, then it will be demonstrated that the limitations of the section upon appeals to this court have no application to criminal cases, but that they have been left by the Constitution just where they were before, regulated by statute and under the power of the Legislature.

It must be admitted that in civil cases, at least, no appeal can be taken to this court, as matter of right, from any decision unless it comes within one of the three classes above mentioned, and the Legislature cannot enlarge the jurisdiction, since the Constitution forbids it. The language is that appeals may be taken *only* from the judgments and orders there specified. But,

obviously, this limitation has no reference whatever to criminal cases. Let us examine the three classes designated, in the inverse order in which they are enumerated in the Constitution and see if this is not so.

1. Appeals from orders granting new trials on exceptions, where the party stipulates that judgment absolute may be given against him in case of affirmance. I assume that no one will claim that any appeal which is conditioned upon a stipulation for judgment absolute could possibly have any application to a criminal case, or that a person charged with a crime was obliged to, or could, stipulate in writing for his own conviction. It is hardly necessary to say that such an appeal was never known to criminal procedure, whereas, it has long been familiar to the practice on the civil side of the court. The notion that such an appeal applies to criminal cases is so absurd that this class of appeals need not be further considered.

2. Appeals from final orders in special proceedings. A special proceeding is a civil remedy. It was always known as such and is so expressly defined by statute. Code Civ. Proc. § 3343. The authors of the Constitution used the term in the sense in which it was generally understood. The record before us shows that the defendant was prosecuted upon an indictment for a public offense. It is not conceivable that any one will contend that it was a special proceeding within the meaning of the Constitution. This disposes of two of the three classes of appeals that the Constitution deals with.

3. But one other class remains to be considered, and that is appeals from final judgments which determine actions. What is an action? The term has been used in the law for ages. In its primary and popular sense it had no application to a criminal prosecution. It applied to a claim or demand made before a tribunal to secure some civil right or to prevent or redress some civil injury. It was not used in the common law to describe a proceeding for the punishment of a crime, any more than it was in military law to describe a proceeding for the punishment of a military offense. In recent times the term has been defined by statute in words broad enough to embrace a proceeding for the punishment of a public offense by indictment, but the law-

makers were careful, in order to avoid confusion, to classify actions and to define a prosecution for the punishment of a public offense by indictment and trial as a *criminal* action. Code Civ. Pro. § 3333, etc.; Code Crim. Pro. § 5. It is significant that the authors of the Constitution said nothing about criminal actions or crimes, but used the word "action" in its primary and popular sense, and therefore, as applicable to civil actions only. When we look for the general definition of the word, as used in the law, we find that it does not include a criminal prosecution and in most definitions that sense is expressly excluded. Burrill; Bouvier; Century Dic.; Stimson's Law Glossary.

There can be no mistake with respect to the language of the section. It permits appeals in only the three cases that have been mentioned, and each class is designed in careful and accurate terms, that is, final judgments in actions, final orders in special proceedings and orders granting new trials where stipulation for judgment absolute is given. By no refinement of thought or language can there be a place made in any of these three classes for an appeal in a criminal case. How can the limitations of the section possibly apply to appeals other than the classes there designated? When we hold that the restrictions of the section apply to all appeals that this court may entertain, then the conclusion is irresistible that the Constitution permits no appeals in any criminal case to this court, since they do not fall within any of the three classes to which our jurisdiction is there limited. This dilemma can be escaped only by adopting the obvious and more rational view that the restrictions apply only in civil cases.

We can then look for the right of appeal in such cases, and the power of the court with respect to the questions to be reviewed, elsewhere than in the Constitution, and we find it, as we shall see hereafter, in the statute law on the subject, which has not been affected in the least by the limitations referred to, but remains, except as to some verbal changes adopting the new names given to the several courts, just as it was before.

But this is not all that may be said concerning the meaning of the word actions, as used in the section of the Constitution

now under consideration. The meaning of a word is frequently determined from the company in which it is found ; and when the eminent lawyers who framed this section associated together in the same section actions, special proceedings and orders granting new trials, with a stipulation for judgment absolute, it would simply be a perversion of language to hold that they had any reference to criminal cases. Moreover, if the phrase, " final judgments determining actions," has any application to criminal cases, then, clearly, a judgment entered upon a verdict of acquittal would be such a judgment, since it certainly determines the action, if action it be, and is final in its nature. It would then follow that the people had now the right to appeal to this court from a judgment in a criminal case where the accused was acquitted by the jury, something that was never known before, and, of course, was not intended.

We will presently see what havoc the construction of the Constitution contended for by the people in this case must inevitably play in other directions with the whole statutory plan of criminal procedure as it exists in this state. But there is still another provision in the section of the Constitution so often referred to that must be noticed. " No unanimous decision * * * that there is evidence supporting, or tending to sustain, a finding of fact or a verdict not directed by the court, shall be reviewed by the Court of Appeals." This is supposed to be the edict that has swept away our jurisdiction to review the most substantial question in this record, or that can appear in any criminal record. By section one of the judiciary article of the Constitution, the jurisdiction of this court, as it previously existed, is retained, except so far as it might be inconsistent with that article. The Code of Criminal Procedure was then in force and had been for several years, and in that statute our jurisdiction in criminal cases was clearly defined and regulated. That same jurisdiction, and all other laws not repugnant to the Constitution were expressly retained, and remain untouched. All the changes and limitations with respect to our power to review cases upon appeal were expressed in the new Constitution in a single section of four sentences, and the provision above quoted is one of them. What is its true scope and mean-

ing? Most clearly it has, in certain cases, withdrawn from this
court the power to review a specified question of law that it
had the power to review before and had freely exercised. That
question of law was the one I have already explained, namely,
whether there is or is not evidence in the record supporting or
tending to sustain a finding of fact or a verdict not directed by
the court. But in what cases was the power to review this
question withdrawn? Certainly not in criminal cases, which
the section did not deal with at all, but only in three cases
where the right of appeal depended upon the provisions of that
section, and it has been shown that these were civil cases and
nothing else.

If anything more is needed in support of this proposition it
can be found in the language of the limitation itself. A *finding
of fact* has no proper application to the result of a trial of an
indictment. While, of course, facts are found, yet the deter-
mination of the jury in such a case was never, I venture to say,
expressed in the fundamental law of any state by such words.
A verdict certainly does apply to such a case, but the word has
been carefully qualified in the provision, and there it is "a ver-
dict not directed by the court." Who ever heard, at least in
modern times, of a verdict in a criminal case directed or not
directed by the court? In civil cases such an expression has a
definite meaning, and is well understood, since the court has
power to direct a verdict for the plaintiff or the defendant ac-
cording to the proof; but the terms are wholly out of place in
criminal procedure. And here, again, when we find the authors
of the constitution associating together, in order to express a
distinct idea, such words as a finding of fact, or a verdict not
directed by the court, the conclusion is plain that they had
reference to civil and not criminal cases.

It mnst always be borne in mind that section 9 deals
only with the classes of appeals there distinctly specified, and
whether these appeals, or any of them, include criminal cases
is the pivot of the whole question. It will be observed that the
limitation now under consideration applies to a decision. It is
called a unanimous decision of the appellate division. What
does the word decision here mean? It is used in the plural

form in the next sentence of the section providing that appeals may be taken of right only from judgments or orders entered upon decisions of the appellate division. In both cases the word is used in the same sense and refers to the same thing, and this court has so expressly decided. People ex rel. Manhattan R. R. Co. v. Barker, 152 N. Y. 434. It is plain, then, that it must refer to the former judicial determination which authorizes the entry or enrollment of the judgments and orders designated in the section; that is to say, final judgments in actions, final orders in special proceedings, and orders granting new trials. It has been shown that those are judgments and orders in civil cases, and cannot possibly be anything else, and, if I am right in that, it must follow that the decisions specified in the two sentences of the section must be decisions in civil cases only, and hence the "unanimous decision" referred to in the limitation must be a decision in a civil case. Whoever claims that it can possibly have any reference to a criminal case should be able to show that such cases are embraced within the three classes designated.

I have now examined each of the three provisions of section 9, which embodies all the limitations that the Constitution has imposed upon appeals to this court. That section, as we have already seen, deals only with three classes of appeals, and these classes are, it seems to me, civil cases only. If the section should be construed to apply to all appeals, it would have the effect of excluding appeals in criminal cases entirely.

It is worthy of note that the lawyers in the convention who framed this section and reported it to the convention, and upon whose advice it was adopted, made no mention, either in the debate, or in any report, of any purpose to interfere with appeals in criminal cases, while the effect it was intended to have upon appeals in civil cases was fully explained and debated; and what is still more remarkable is, that a member of the judiciary committee, who was prominent in framing the section and urging its passage, is the author of two bills which he presented to the legislature in behalf of the bar of the state, revising both the Codes of Criminal and Civil Procedure, in order to bring them into harmony with the changes in the practice which the

new Constitution, then adopted, had introduced. His work is found in chapters 880 and 946 of the Laws of 1895. These statutes, enacted for the very purpose of carrying the changes into effect, have great weight in the construction of the limitations upon the appeals contained in section 9. The code regulating the procedure in all cases has incorporated in it all the limitations upon appeals that are to be found in this section, in the very words there used. While in the code regulating the procedure in criminal cases, and defining the right of appeal in such cases to this court, they have all been omitted and the practice left just as it was before. It would be impossible to conceive a weightier example of, not only legislative construction, but construction by the framers of the Constitution themselves. We know that arguments drawn from like sources, but far weaker in degree, have settled disputed questions with respect to the meaning of the Federal Constitution, and, therefore, they cannot be out of place here.

When we want to determine what cases and questions this court may review, we always look into the statute to see whether the power has been granted, and if it has been then the only question that can arise is whether the lawmaking body had the power to grant it, or whether it has been abrogated by the Constitution. The Constitution is not a code of practice, but an instrument containing fundamental principles and restrictions.

Looking into this statute we find that the legislature has provided for appeals to this court, without any restrictions or limitations whatever, either with respect to the mode of review or the questions to be considered, in at least seven distinct cases that can arise only in a criminal prosecution. They are all to be found in section 519 of the Code of Criminal Procedure, or in statutes that are made a part of it, and the appeal is declared to be a matter of right. It will be profitable to note these cases and we can then see how every right of appeal in criminal cases, as there given, will be shattered by the construction of the Constitution, which is urged by the People in this case.

1. The defendant only may appeal from a judgment of conviction in a capital case directly to this court from the trial court.

No such appeal as this is provided for in the Constitution, though judgments of death are excepted from certain of its restriction.

But the right of appeal cannot be built upon mere words of exception, and we must look for it elsewhere, and it is found in the statute law which the Constitution retained.   The appeal which the Constitution provides for is not from a judgment of conviction in a capital case, or other criminal cases, but a final judgment which determines an action.   Moreover, the right of appeal specified in section 9 is general, and given to the plaintiff as well as the defendant, and if the section applies to criminal cases, the People may appeal as well as the defendant, since there is no restriction in that respect.   So that upon the assumption that the section is applicable to criminal cases, there is now no right to appeal to this court, even in a capital case, unless, indeed, we are driven to hold that a judgment of conviction upon an indictment and a final judgment in an action mean one and the same thing and that the People may appeal as well as the defendant.

2.  An appeal is also given by the statute to this court from a judgment of conviction.   That appeal may be taken by either party.   The appeal now before us is from a judgment affirming a conviction.   It is in no proper sense an appeal from a final judgment in an action, and hence is not within the limitations or restrictions of section 9 of the judiciary article of the Constitution.   The right of the defendant to appeal to this court from a judgment affirming his conviction implies the right to be heard on every question of law disclosed by the record, including the question whether there was any evidence to submit to the jury, and also implies the power in the court to decide all such questions.

The Constitution has not abrogated, in the slightest degree, the right or the power.

3  The statute also gives the right of appeal from a judgment of the same court affirming or reversing a judgement for the defendant on a demurrer to the indictment.   Here, again, the original judgment must be one in favor of the defendant.   A judgment sustaining or overruling a demurrer to an indictment

is, from its very nature, interlocutory. It determines nothing except the sufficiency of a pleading. The guilt or innocence of the accused is not involved, but only a mere preliminary question of law. Such a judgment is in no sense final, much less is it a final judgment which determines an action. This shows that the limitations of section 9 have no application to criminal cases, otherwise the right to take such an appeal could not exist and the statute would be unconstitutional, since the section declares that appeals may be taken only from the judgments and orders there specified.

4. The statute also gives an appeal as matter of right from an order affirming, vacating or reversing an order of the court arresting judgment. It needs no argument to show that such an appeal is not within the purview of the limitations of section 9, and it is referred to here only for the purpose of exposing the weakness of the contention made in this case, that the restrictions of the Constitution are applicable to criminal cases, since, if they were, such an appeal could not possibly be taken, or authorized without violating the fundamental law.

5. An appeal is also authorized in a criminal case from a final determination affecting a substantial right of the defendant. Here, again, the appeal is given only when the decision affects the defendant. It is perfectly clear that all appeals of this character to this court have been abolished by the Constitution in civil cases, but no one will contend that they have been abolished in criminal cases, and, if they have not, then what becomes of the contention that the limitations on appeals in section nine apply to both cases alike?

6. Appeals may also be taken to this court from the supreme court by certain charitable institutions, and by parents and guardians when children have been summarily committed to such institutions. Of course, such appeals are not from any final judgment in an action, or from a final order in a special proceeding, or an order granting a new trial, but in summary orders in proceedings of a criminal nature. The case is mentioned here, since it serves to illustrate the wide distinction which the Constitution has observed between appeals in civil

cases and in criminal cases. The right to bring such appeals can never be attacked except upon the ground now urged, that criminal cases are within the limitations of the constitution, and when that proposition is sanctioned by this court the right is gone, and it certainly ought to go if it be true that we have no power upon an appeal from a conviction of murder in the second degree, or any lesser crime, unanimously affirmed below, to look into the record in order to ascertain whether there was any evidence to submit to the jury.

7. I will mention only one other case, though this branch of the discussion might be prolonged. By chapter 601 of the Laws of 1895, a defendant who has been convicted as a disorderly person for abandoning his wife is given the right to appeal to this court from the order of commitment, after the affirmance by the supreme court; and we have just held that the statute is not violative of any provision of the Constitution. People, etc. v. Cullen, 153 N. Y. 629. I am unable to see how we could have sustained that statute except upon the ground that the limitations of section 9 were applicable only to civil remedies, since the restriction deprives the legislature of all power to enlarge the right of appeal. Moreover, the right to appeal to this court in so many and such apparently trivial cases, proves that the scheme of limiting appeals did not include criminal cases.

It is obviously impossible at this day, if it ever was possible, to classify appeals in civil and criminal proceedings together, and subject them all alike to the same general and sweeping restriction. The general principles that govern the two branches of the law, the rules of evidence and the methods of procedure are radically different. Cancemi v. People, 18 N. Y. 128. In civil cases issues of fact are determined by a preponderance of testimony, and the law subjects every case and each party to the same general rules. Not so in criminal cases. The accused must be acquitted unless his guilt is established beyond a reasonable doubt. In some cases, as in treason and in conspiracy, certain overt acts must be proven and, sometimes, by at least two witnesses. No conviction can be had upon the uncorrroborated testimony of an accomplice, and, in at least

one class of public offenses, the jury, under the Constitution, must determine both the law and the facts. How can this court ever know whether these rules of law have been observed at the trial if we are concluded upon all the substantial issues in the case by the unanimous opinion of the court below and are forbidden to look into the record to see whether there was any legal evidence upon which to base the judgment? Moreover, the right of appeal in criminal cases is not given to both sides as in civil cases, but generally, though not always, to the defendant alone.

The attempt under such conditions to group appeals in civil and criminal cases together in the same class, and to subject them all to the same general and sweeping restrictions, such as are to be found in section 9, is to my mind such a utopian scheme that I am unwilling to believe that any constitutional convention that ever assembled in this state entertained it for a moment. In the criminal law it is a fundamental principle embodied in the Constitution that a person cannot be deprived of life or liberty without proof of the conviction of some crime, and by the common law which the Constitution has adopted, as well as by express statute, unless the proof establishes guilt beyond a reasonable doubt, the accused is entitled to an acquittal as an absolute right. Hence the phrase, " tending to sustain a verdict" has no application. The question is not whether the proof tends to sustain the charge as in civil cases, but whether it is established beyond a reasonable doubt. This may be illustrated by the very common case of positive proof by an accomplice that the accused did in fact commit the crime. Certainly here is evidence tending to sustain the charge and tending to sustain a verdict not directed by the court. But the law will not permit a conviction to be had on such proof unless corroborated, and yet, according to the contention of the People, if the accused happens to be convicted on such proof, without any corroboration, we have no jurisdiction to look into the record to correct such an error in any case where the court below unanimously affirms the conviction.

If the rule in civil cases applies, it will not help the defendant to show from the record that he has excepted to the sub-

mission of the case to the jury. It is, of course, no answer to this argument to say that the defendant should have raised the question in some other way. Szuchy v. Hillside Coal & Iron Co., 150 N. Y 219. The radical vice in the contention, from beginning to end, consists in the effort to apply such a restriction to appeals in criminal cases, by fastening upon a word or expression in the Constitution, in the nature of an exception, and distorting its meaning.

In a conviction for libel, where the jury determines the law and the facts, can we not look into the record to see whether there was anything tending to sustain the verdict, or is the unanimous affirmance below conclusive? If this restriction is confined to civil cases, where it obviously belongs, these questions cannot possibly arise.

The solution of the question raised in this case seems very plain and simple. We have a statute relating wholly to criminal procedure, enacted since the Constitution went into effect, which, in the plainest terms, gives us jurisdiction over every question of law in the record, and that includes the power to reverse the conviction, if we are satisfied that there was no evidence on any of the material questions of fact to submit to the jury. This statute gives us the same jurisdiction that we had before the present Constitution was enacted. It cannot be shown that this statute is in any way repugnant to the Constitution or to any of its limitations, or that it has in any respect been abridged or modified by that instrument. Every presumption is in favor of its validity. The Constitution and the statute can stand together, and each can perform the office which the lawmakers intended and had in view. No conflict can possibly be created between them unless we push the provisions of the Constitution to a point not warranted by the language. We have only to apply the code to appeals in criminal cases and the limitations of the Constitution upon appeals to civil cases, and there is no longer any room for conflict.

I regard the question upon which the court has concluded to reverse the judgment as comparitively insignificant. I need not discuss it further than to say that, in my opinion, it is infinitely more difficult to defend the proposition that we have

lost jurisdiction over the most substantial questions in the case than it is to uphold the charge of the learned trial judge.

I, therefore, dissent from the judgment in so far as it holds that we have no jurisdiction to look into the record to see whether there was any evidence to submit to the jury, and I need not say anything further as to the alleged error in the charge.

BARTLETT, HAIGHT and VANN, JJ., concur with MARTIN, J., for reversal.

GRAY, J., says : I think this judgment should be affirmed. I concur with my brother MARTIN'S opinion upon all the points discussed, except as to the alleged error in the charge of the trial judge, and it is from the conclusion which he reaches in that respect that I dissent.

O'BRIEN, J., reads dissenting opinion on question of jurisdiction ,but declines to vote on the question of alleged error in the charge.

Judgment reversed and new trial granted.