PEOPLE v. CHARTOFF et al.

(Supreme Court, Appellate Division, Second Department. May 1, 1902.)

1. CRIMINAL PROSECUTION—MISLEADING INSTRUCTIONS.
   In a prosecution for a misdemeanor, it was error for the court, after
   having charged that the jury had nothing to do with the punishment,
   and "should never interfere to determine what punishment should be in-
   flicted by hesitating to convict," to further remark that the crime charged,
   "being a misdemeanor, is, of course, not of the character of those trials
   which you have heard here, which have involved charges of crime far
   different and far more severe in their punishment than the crime charged
   here"; the latter charge tending to authorize a conviction on slighter evi-
   dence than in other cases.

2. SAME.
   A charge in a criminal case that, "When you have determined who it is
   that tells the truth, you have determined the guilt or innocence of these
   parties," was misleading, as witnesses might be entirely truthful, and
   yet their evidence be insufficient to remove a reasonable doubt.

3. ERRONEOUS INSTRUCTIONS—PRESUMPTION OF PREJUDICE.
   It is not incumbent on defendants to show prejudice from an erroneous
   charge, but the prosecution must show want of prejudice.

4. APPEAL—RIGHT TO SET ASIDE VERDICT.
   Even if remarks of the court laid down no erroneous rule of law, the
   court, on appeal, has discretion to set aside the verdict if they improperly
   influenced the jury.

5. SAME—NECESSITY FOR EXCEPTIONS.
   Under the express provisions of Code Cr. Proc. § 527, the court, on ap-
   peal in a misdemeanor prosecution, has power to award a new trial,
   though the error in question is not presented by an exception.

Appeal from trial term, Orange county.

Harry and Gussie Chartoff were convicted of crime, and appeal.
Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS,
and WOODWARD, JJ.

Henry Hirschberg, for appellants.
A. H. F. Seeger, for respondent.

JENKS, J. I am of opinion that the judgment must be reversed,
and a new trial ordered. The learned court charged in part as follows:

"In addition to that, gentlemen, these persons are accused of a misde-
meanor, as has been said here; and it is undoubtedly said to you, gentlemen,
in a cautionary way, because it is a very flagrant thing in the administration

of justice that jurors absolutely ignore the fact that they have nothing to do with the gravity of the crime at all, and with the punishment of crime; and yet it is a thing that occurs every time court is held and a case is submitted to a jury,—a criminal case,—that they hesitate to convict because they fear that some undue punishment will be inflicted upon the person if he is convicted. Now, gentlemen, you have nothing to do with the punishment, and no jury ever has anything to do with the punishment, in case a conviction is brought about by sufficient evidence. The function of the jury and of the judge is entirely distinct, and the judge is vested with the authority to determine what punishment shall be inflicted, and what punishment is due and just under the circumstances; and if he is not of sufficient discretion, if he has not sufficient judgment to determine what is proper in particular instances, why, then, of course, the people have made a mistake in putting him where he is. But the jury should never interfere to determine what punishment should be inflicted by hesitating to convict, if, under their oaths, they are satisfied that the person accused of crime is guilty of the crime charged."

The court immediately continued:

"Now, this crime charged here is a misdemeanor, and, it being a misdemeanor, is, of course, not of the character of those trials which you have heard here, which have involved charges of crime far different and far more severe in their punishment than the crime now charged."

By making such comparison with other trials which the jury or the jurors had heard in that court, did not the learned judge not only instruct (or at least permit) the jury in this case to take into consideration the very matter which he said a jury should never consider, namely, the punishment which might follow a conviction, but also permit the jury to infer from the fact that this crime was a misdemeanor, with but a comparatively slight punishment; that a different rule applied to the case at bar than that which obtained upon the trials of more heinous offenses, which admitted of severer punishments? After stating that a jury should never "interfere to determine what punishment should be inflicted by hesitating to convict" (if they believed a defendant guilty), did not the learned judge, in effect, tell this jury that, a fortiori, in a case of crime which, in comparison with other crimes, was venial, and entailed but slight punishment, they might the more readily arrive at a conviction? Of course, but one and the same rule must obtain in the trial of every crime, namely, that the defendant must have trial and fair deliverance upon the evidence, and is entitled to an acquittal in case of a reasonable doubt as to whether his guilt is satisfactorily shown by the evidence adduced. The vice of this charge was that it might possibly permit the jury to conclude that there was some sliding scale, graduated by the gravity of the crime and the severity of the punishment therefor; whereas the defendants were surrounded by the same safeguards as if they had stood at the bar indicted for murder in the first degree.

Again, the learned court charged the jury:

"Now, when you have determined what the truth is in this case, you have determined the whole thing. When you have determined who it is that tells the truth, you have determined the guilt or innocence of these parties."

I think that these instructions tended to mislead the jury; for the jury was told that, if it determined that the witnesses for the prosecution told the truth, it thereby determined the guilt of the defendants. Witnesses may be entirely truthful in their testimony, and im-

75 N.Y.S.—69

press the jury with the truth of their statements, and yet their evidence may not be sufficient to remove a reasonable doubt justly founded upon their testimony. It is true that in other parts of the charge the court instructed the jury as to reasonable doubt and the benefit assured therefrom to the defendants; but this was an isolated, cogent instruction that, when the jury determines who tells the truth, it thereby, as matter of law, also determined innocence or guilt. If there be error, it is not incumbent on the defendants to show how it prejudiced them, but the prosecution is bound to show that the defendants could not possibly have been injured by it. People v. Helmer, 154 N. Y. 596, 49 N. E. 249. Even if the remarks of the court laid down no absolutely erroneous rule of law, yet it is within our discretion to set aside the verdict if we see that such remarks improperly influenced the jury. Conners v. Walsh, 131 N. Y. 590, 30 N. E. 59. Our power to order a new trial is clear, irrespective of the question whether the error is presented by an exception. Section 527, Code Cr. Proc. Whether, in our opinion, the evidence points clearly to the guilt of the defendants does not matter. The sole question before us is whether the defendants had a fair trial upon the evidence, and with the full observance of all the safeguards which the law affords.

The judgment of conviction should be reversed, and a new trial ordered. All concur.