THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOSEPH S. AUERBACH, Defendant.

Court of General Sessions, New York County, July 10, 1931.

Thomas C. T. Crain, District Attorney, Louis J. Capozolli, Assistant District Attorney, for the plaintiff.

McManus, Ernst & Ernst, for the defendant.

FRESCHI, J.   Demurrers are interposed to the four indictments here.   Two accuse the defendant of the crime of grand larceny in the first degree and the others accuse the defendant of " unlawfully and knowingly " making a false financial statement in writing. These prosecutions are predicated upon defendant's efforts to obtain credit from the complainants, the Equitable Trust Company of New York and the Broadway National Bank and Trust Company of New York.

Indictment No. 186962 in substance charges that the defendant " on January 20th, 1930, with intent to deprive and defraud the Equitable Trust Company of New York of certain moneys, goods and property," and to appropriate the same to his own use, did then and there feloniously, fraudulently and falsely pretend and represent to the said corporation that a certain financial statement in writing which he, the said defendant, had on or about November 9, 1929, delivered to the said corporation was a true statement of his financial condition while doing business as D. Auerbach & Sons as of October 31, 1929; that on said date the accounts receivable of the defendant were $742,792.94; that his bills receivable were $107,995.50; that his cash on hand and on deposit was $434,513; that the value of his bonds was $14,728.75; that his insurance reserves were $26,743.50; that the value of his seat on New York Cocoa Exchange was $7,500; that his good will value was $200,000; that the value of his factory building and equipment was $4,822,004.63; that the value of his capital stock in Ourback Realty Corporation was $610,000; that his capital stock in the Jimlea Corporation was $220,000; that the value of his capital stock in Ode and Gerbereaux, Inc., was $400,000; that the value of his capital stock in the Fraw Realty Co., Inc., was $143,000; that his accounts payable were $74,872.96; that his total liabilities were $2,339,872.96; that his net worth was $8,411,392; by color and by aid of which said false and fraudulent pretenses and representations, the defendant did on January 20, 1930, feloniously and fraudulently obtain from the possession of the Equitable Trust Company of New York $200,000 in money, lawful money of the United States of America, of the said Equitable Trust Company of New York, with intent to deprive and defraud it of the same, and to

appropriate the same to his own use." This indictment further alleges:

" Whereas, in truth and in fact, the said financial statement in writing was not a true statement of the financial condition of the said defendant as of October 31st, 1929, and on October 31st, 1929, the Accounts Receivable of the said defendant were not $742,792.94, on October 31st, 1929, the Bills Receivable of the said defendant were not $107,995.50, on October 31st, 1929, the Cash on Hand and On Deposit of the said defendant was not $434,513, on October 31st, 1929, the value of Bonds of the said defendant was not $14,728.75, on October 31st, 1929, the Insurance Reserves of the said defendant were not $26,743.50, on October 31st, 1929, the value of a seat on New York Cocoa Exchange was not $7,500, on October 31st, 1929, the good will of the said defendant was not $200,000, on October 31st, 1929, the value of factory building and equipment of the said defendant was not $4,822,004.63, on October 31st, 1929, the value of capital stock in Ourback Realty Corporation of the said defendant was not $610,000, on October 31st, 1929, the capital stock in the Jimlea Corporation of the said defendant was not $220,000, on October 31st, 1929, the value of capital stock of Ode and Gerbereaux, Inc. of the said defendant was not $400,000, on October 31st, 1929, the value of capital stock in the Fraw Realty Co., Inc., of the said defendant was not $143,000, on October 31st, 1929, the Accounts Payable of the said defendant were not $74,872.96, on October 31st, 1929, the total liabilities of the said defendant were not $2,339,872.96, on October 31st, 1929, the net worth of the said defendant was not $8,411,392;

"And whereas, in truth and in fact, the pretenses and representations so made as aforesaid by the said defendant to the said corporation called The Equitable Trust Company of New York were in all respects utterly false and untrue, as he, the said defendant, at the time of making the same, then and there well knew;

"And so the grand jury aforesaid do say that the said defendant, in the manner and form aforesaid and by the means aforesaid, the said proper moneys, goods, chattels and personal property of the said corporation called The Equitable Trust Company of New York, then and there feloniously did steal; against the form and statute in such case made and provided, and against the peace of the People of the State of New York and their dignity."

Indictment No. 186963 charges grand larceny in the first degree committed by defendant on August 15, 1929, with intent to deprive and defraud the Broadway National Bank and Trust Company of New York, of the proper moneys, goods, chattels and personal property hereinafter mentioned, and of the use and benefit thereof,

and to appropriate the same to his own use, and that the defendant did then and there feloniously, fraudulently and falsely pretend and represent to the said corporation that a certain financial statement in writing which the said defendant had on or about July 24, 1929, exhibited and delivered to the said corporation was a true statement of his financial condition while doing business under the firm name of D. Auerbach & Sons as of January 1, 1929; that on January 1, 1929, the merchandise on hand and raw material of the said defendant was $1,238,837.53; that on January 1, 1929, his accounts receivable were $627,226.56; that on January 1, 1929, his bills receivable were $58,290.47; that on January 1, 1929, his cash on hand and in bank was $682,097.12; that on January 1, 1929, the value of his New York city bonds was $14,728.75; that on January 1, 1929, his deferred charges were $49,460.72; that on January 1, 1929, the value of his seat on Cocoa Exchange was $7,500; that on January 1, 1929, the value of his good will, trade-marks and patents was $200,000; that on January 1, 1929, the value of his capital stock in the Ourback Realty Company was $565,300.96; that on January 1, 1929, the value of his capital stock in the Jimlea Corporation was $190,310; that on January 1, 1929, the value of his capital stock in Ode and Gerbereaux, Inc., was $400,000; that on January 1, 1929, his accounts payable were $46,185.63; that on January 1, 1929, the estate of A. L. Auerbach due 1937 was $690,000; that on January 1, 1929, his total liabilities were $2,136,185.63; that on January 1, 1929, his net worth was $8,164,556.86; by color and by aid of which said false and fraudulent pretenses and representations, the defendant did on August 15, 1929, feloniously and fraudulently obtain from the possession of the said Broadway National Bank and Trust Company of New York $240,849.10 in money, lawful money of the United States of America, property of the said corporation, with intent to deprive and defraud it of the same and of the use and benefit thereof and to appropriate the same to his own use." The indictment also avers:

" Whereas, in truth and in fact, the said financial statement in writing was not a true statement of the financial condition of the said defendant as of January 1st, 1929, and on January 1st, 1929, the merchandise on hand and raw material of the said defendant was not $1,238,837.53, on January 1st, 1929, the Accounts Receivable of the said defendant were not $627,226.56, on January 1st, 1929, the Bills Receivable of the said defendant were not $58,290.47, on January 1st, 1929, the Cash on Hand in Bank of the said defendant was not $682,097.12, on January 1st, 1929, the value of New York City Bonds of the said defendant was not $14,728.75, on January 1st, 1929, the Deferred Charges of the said

defendant were not $49,460.72, on January 1st, 1929, the value of a seat on Cocoa Exchange was not $7,500, on January 1st, 1929, the value of the Good Will, Trade Marks, Patents of the said defendant was not $200,000, on January 1st, 1929, the value of Capital Stock in the Ourback Realty Co. of the said defendant was not $565,300.96, on January 1st, 1929, the value of Capital Stock in the Jimlea Corporation of the said defendant was not $190,310, on January 1st, 1929, the value of the Capital Stock in Ode & Gerbereaux, Inc. of the said defendant was not $400,000, on January 1st, 1929, the Accounts Payable of the said defendant were not $46,185.63, on January 1st, 1929, the Estate of A. L. Auerbach due 1937 was not $690,000, on January 1st, 1929, the Total Liabilities of the said defendant were not $2,136,185.63, on January 1st, 1929, the net worth of the said defendant was not $8,164,556.86;

"And whereas, in truth and in fact, the pretenses and representations so made as aforesaid by the said defendant to the said corporation called Broadway National Bank and Trust Company of New York, were in all respects utterly false and untrue, as he, the said defendant, at the time of making the same, then and there well knew;

"And so the grand jury aforesaid do say that the said defendant, in the manner and form aforesaid and by the means aforesaid, the said proper moneys, goods, chattels and personal property of the said corporation called Broadway National Bank and Trust Company of New York, then and there feloniously did steal; against the form and statute in such case made and provided, and against the peace of the People of the State of New York and their dignity."

Indictment No. 186964 charges the crime of unlawfully making a false financial statement in writing on or about November 9, 1929, and sets forth a photostatic copy of the balance sheet of this defendant trading as aforesaid as of October 31, 1929, and contains the same items and allegations of fact as are contained in indictment No. 186962 and charges that the said defendant did unlawfully and knowingly make to the Equitable Trust Company of New York the said false statement in writing signed by him, and concludes by stating that at the time of the making of said statement in writing the defendant knew such items and representations to be false.

Indictment No. 186965 charges the crime of unlawfully making a false financial statement in writing on or about July 24, 1929, in that the said defendant did unlawfully and knowingly make to the Broadway National Bank and Trust Company of New York the said false statement in writing signed by him, a photostatic copy

of which is attached to the indictment, with intent that the said statement should be relied upon respecting the financial condition and the means and ability to pay of the said defendant, for the purpose of procuring credit, which said statement the defendant knew to be false, and sets forth the same items as are alleged in indictment No. 186963.

Defendant challenges the sufficiency of · these indictments on the ground that " in none of the indictments does it appear in what respect the items contained in the statements were false, nor whether the figures set forth in the statements were less than or greater than the actual condition of the defendant   *   *   *   which is necessary in order to support the indictments." In other words, the defendant contends that there is not a plain and concise statement of the act or acts constituting the crime as required by section 275 of the Code of Criminal Procedure. Because of such contention, I have deemed it necessary to quote almost verbatim the allegations of the several indictments. What meaning do they convey? And is the language so used that a person of common understanding will know what is meant and with a degree of certainty give the defendant notice of the particular offense with which he is charged ? That is the test after all. The offense, it seems to me, is clearly defined. (See *Hart* v. *Cleis*, 8 Johns. 41.) When an indictment sets forth the acts, intent, fraud and reliance complained of in larceny cases by false pretense, it is good and sufficient. (*People* v. *Hart*, 35 Misc. 182.)

In order to establish confidence in his ability to pay his debts and thereby to induce others to extend him credit, financial statements representing the defendant's full assets and liabilities were given complainants to rely upon them. These financial statements are characterized by an allegation in these indictments as " false " and made " with intent to deprive and defraud " each complainant named therein. This constitutes the principal fact charged; and the fair, natural and reasonable intent, meaning and inference therefrom is that the offense charged was committed in each instance by a distinct misrepresentation of fact as to defendant's financial worth. The additional averment of fact in these indictments with respect to such alleged false net balance of financial worth according to said financial statements is the specific charge contained in the pleading under consideration that " Whereas, in truth and fact " the said financial statements in the particulars mentioned were not true statements of the financial condition of the defendant and that the various items set forth in the indictments were not as represented by him. Obviously, the specification is " a plain and concise statement " that the defendant in such state-

ments falsified his financial condition by knowingly giving a certain definite net worth in each case and other items and figures as stated therein, when, in fact, he knew that his net worth and the said other items were not as represented. This allegation is tantamount to saying that the figures were less than those mentioned in the indictments. Clearly, the primary purpose of the defendant was to practice, in effect, a deception in order to procure the money and property described in the indictments which perhaps he might otherwise not have obtained. It is not imperative upon the People to allege what the defendant's exact worth was or to set forth the exact figures less in amount than those concerning the items complained of in order to support such indictments. The crime is sufficiently charged, in my opinion, when it is alleged that the representations are untrue and false and known to be false and untrue to the defendant, who made them to be relied upon for the procuring of credit or property.

As a general rule, a particular description of the material facts, figures and circumstances must be specified in each case unless the general form suffices to constitute the offense. Joyce on Indictments ([2d ed.] § 284) quotes the objects for these requirements as follows:

" *First*, in order to identify the charge, lest the grand jury should find a bill for one offense and the defendant be put on his trial in chief for another.

" *Secondly*, that the defendant's conviction or acquittal may inure to his subsequent protection should he again be questioned on the same grounds.

" *Thirdly*, in warranting the court in granting or refusing any particular right or indulgence incident under the law to the case.

" *Fourthly*, to enable the accused to determine on the line of his defense, and prepare for it both on the law and facts; and

" *Fifthly*, and finally, to put it in the power of the court to look through the record and to decide whether the facts charged are sufficient to support a conviction for a particular crime and to warrant the judgment; also to regulate the appropriate punishment for the particular offense." (See, also, *People* v. *Helmer*, 154 N. Y. 596; *People* v. *Lammerts*, 164 id. 137; *People* v. *Farson*, 244 id. 413; *People* v. *Bennett*, 4 Abb. Pr. [N. S.] 89, 92; Code Crim. Proc. §§ 275, 284, 285 and 684.)

The plain intendment of the language in these indictments is that the defendant's figures in his statements were knowingly, that is, designedly, false. I do not see how defendant could be misled by the pleader's failure to say in so many words what the defendant was worth or that certain figures either in the list of

assets or liabilities were " less than " or " not as much as " those stated and represented. It could not be reasonably held that such an omission, per force, means that the defendant's figures were larger in amount than those alleged. The denial of the truthfulness of the representations as to defendant's net worth and figures furnished by him to the complainants who believed them to be true, and, in reliance thereon, acted upon them, constitutes a sufficient negative of an affirmative statement of fact.

To say that the representation of the defendant is not true and is in fact false, is to destroy specifically the efficacy of the affirmation. The unqualified use of the negative in this manner cannot be held ambiguous, even though it might be conceded that the facts could have been more clearly stated. The charge is founded on defendant's failure to state the truth about his financial condition. This form of negative expression alluded to does not carry with it or imply an affirmative. For instance, in homicide cases where justification is a defense it is not necessary to negative the exceptions to the statute. (*Slack* v. *State*, 61 Tex. Cr. 372; S. C., Ann. Cas. 1913B, 112, 116.) As in the construction of statutes so also in determining the meaning of pleadings, the common, everyday meaning must prevail as against technical objections, and they must be read in a sense that " harmonizes with the subject-matter and general purpose " of the pleading. The words in this case are explicit and from the context we can collect the offense and a description of the facts as against mere results and conclusions. The element of falsity charged is sufficient to raise an issue of fact for a jury as to whether the statements referred to are falsehoods, and whether the intent to defraud is susceptible of proof by inferences from proven facts and circumstances, showing the state or quality of mind, comes under the burden upon the prosecutor in criminal cases. (*People* v. *Hart, supra; People* v. *Haynes,* 14 Wend. 546, at p. 560.) I see no faulty or doubtful form of pleading in this indictment. The negative is properly pleaded. (6 Am. & Eng. Ann. Cas. 726; *Jefferson* v. *People,* 101 N. Y. 22; *People* v. *Walbridge,* 6 Cow. 512.) Perhaps a motion for a bill of particulars might lie here. (See *People* v. *Tweed,* 63 N. Y. 194.)

I think the indictments are valid under section 1293-b of the Penal Law (added by Laws of 1912, chap. 340, as amd. by Laws of 1921, chap. 306) under which they are drawn. The only factor in which the court is interested for the purpose of this decision is the falsity of the statement. *People* v. *Albow* (140 N. Y. 130), cited by defendant, is not in point.

Demurrers disallowed in each case, and defendant is permitted, at his election, to plead *de novo;* but if he do not plead, a plea of not guilty will be entered.