The People of the State of New York, Respondent, *v.*
Jeremiah Cotto, Appellant.

When a party, jointly indicted with another for an offense charged to have ·
been the result of their joint act, is tried separately, either upon his own
election or otherwise, the indictment is well supported by proof sufficient ·
to warrant a conviction, if the party on trial had been alone indicted..
(Code Crim. Pro. §§ 292, 391.)

(Submitted January 26, 1892; decided February 9, 1892.)

Appeal from judgment of the Court of Sessions of Kings;
county made December 4, 1891, convicting the defendant of.
the crime of murder in the first degree.

The following is the opinion in full:

"On the morning of the 24th of July, 1891, the dead
body of Luigi Francolosa was discovered in the highway in.
the town of New Utrecht, Kings county, by a farm hand.
who was returning from New York to the place where he was.
employed upon a farm near the suburbs of Brooklyn. He
had just delivered some produce at Washington market, and
when driving his team along the road about daybreak the
horses shied, and his attention was in this way directed to an
object in the road, which, upon further examination, proved
to be the body of a human being. He immediately gave
information to the public authorities, and the body was removed
to the morgue and subsequently identified as that of Franco-
losa, who lived with his wife and the defendant in Twenty-
fifth street, Brooklyn. It was evident that the death was the.
result of violence, and twelve stab wounds were found upon
the body, most of which were necessarily mortal; and it was
shown that the deceased came to his death by reason of these
·wounds inflicted upon him. The defendant and the wife of
Francolosa were jointly indicted for the murder, and upon a
separate trial the defendant was convicted of the crime of
murder in the first degree, and this appeal is for the purpose
of reviewing the judgment entered upon this conviction. It
appeared that the deceased left his house in company with the.
defendant some time during the night preceding the discovery
of the body, and started off to gather rags, which seems to
have been the occupation of both the deceased and the defend-

-ant.  The killing of the deceased by the defendant by criminal means was established by various admissions and confessions of the defendant, as well as by circumstantial evidence, such as the sale by the defendant, immediately after he inflicted the wounds upon the deceased, of the clothing which he, the defendant, then wore, and which was found to be stained with blood, after cutting and otherwise destroying them so as to prevent identification.  It was also shown that a few hours after the body was found that the defendant and the wife of the deceased called at the police station and made inquiry about the deceased, whom they pretended to believe had been locked up, though it is apparent that he knew then that he was dead in consequence of violence inflicted by himself.  He removed a part of the furniture of the deceased from the house before he claims to have known of the death, made preparations for flight, and, when arrested, the jewelry of the wife was found in his possession.  It is unnecessary to make further reference to the testimony tending to show that the defendant was the author of the crime, because he was sworn as a witness at the trial in his own behalf and admitted that he inflicted upon the body of the deceased the stabs which produced his death with a knife, which he threw away after committing the deed. While his testimony established beyond any doubt the fact that the defendant committed the homicide, he at the same time attempted to show that the killing was in self-defense.  The substance of his testimony on this point is that while he and the deceased were at the point in the road where the body was found, the deceased demanded that the defendant should give to him the rags which he had gathered, and on refusal the deceased assaulted him and knocked him down, whereupon the defendant, being apprehensive for his life, drew the knife and inflicted the stab wounds, in consequence of which Francolosa died.  This theory had no support except in the testimony of the defendant himself, nor was there any fact or circumstance to corroborate him appearing in the case.  Leaving out the cross-examination of the defendant and putting his testimony in the most favorable light, and keeping in view the other testimony in the case, a jury, seeking for the truth, might well hesitate before attaching much weight to the statement of the

defendant. They were not only improbable in themselves, but in conflict with all the other testimony, including his own prior admissions and all the important circumstances bearing upon the case. The cross-examination rendered it still more contradictory, inconsistent and improbable. The learned trial judge submitted all the testimony to the jury in a very fair charge which was quite favorable to the defendant. In regard to the testimony of the defendant that he acted in his own defense the learned judge instructed the jury that if they believed it then they should acquit him. It is obvious that the case was one for the consideration of the jury. The trial was in all respects eminently fair, and we are unable, after careful examination, to find anything in the record sufficient to create a doubt as to the correctness of the result or to warrant us in interfering with the verdict. Indeed the learned counsel for the defendant in the brief which he has submitted to us presents but a single question and that is one of law growing out of the form of the indictment. His proposition is, as we understand him, that as there is but a single count in the indictment and that charges as the offense the killing of the deceased as the joint act of the defendant and the wife of Francolosa, the proof must establish a homicide committed by the defendants jointly and that the indictment is not supported by proof of separate acts as against either of the defendants. The wife of the deceased was not present when the wounds were inflicted that produced his death yet she is indicted jointly with the defendant. But under section twenty-nine of the Penal Code a person concerned in the commission of a crime, whether he directly commits the act constituting the offense or aids and abets in its commission, and whether present or absent, and a person who directly or indirectly counsels, commands, induces or procures another to commit a crime, is a principal. Several persons, therefore, may be convicted of the same crime upon a joint indictment on proof of acts done in furtherance of the crime that might in a certain sense be called separate. For instance one may be convicted upon proof that he fired the shot or struck the blow which produced death and another who is jointly indicted may also be convicted of the same crime, who though not

present when the blow was struck or the shot fired, yet upon the proof, advised, commanded or procured the doing of the act. Under section 391 of the Code of Criminal Procedure one of several defendants, jointly indicted for a felony, may be tried separately and, of course, when thus tried the proof is properly confined to the acts of the party upon trial, and under section 292 upon an indictment against several defendants any one or more may be convicted or acquitted. It seems to us plain, therefore, that when a party jointly indicted with another for an offense, charged to have been the result of their joint act, is tried separately, either upon his own election or otherwise, the indictment is well supported by proof sufficient to warrant a conviction if the party on trial had been indicted for the offense alone.

"A sufficient motive on the part of the defendant for the commission of the offense was established by proof strongly tending to show improper relations between him and the wife of the deceased and of a desire on the part of both to put the deceased out of the way and thus remove any obstacle to their marriage. The defendant swore that he left the place when the stabs were inflicted upon the deceased and went to the house and there informed the wife of what he had done and then it was that both of them undertook to deceive the police by pretending that they supposed that the deceased had been picked up by them and taken to the station. It is unnecessary to go into the evidence on this point in much detail. It was submitted with the other evidence to the jury. In brief the proof was sufficient to justify the jury in finding that the defendant, acting from guilty motives, inflicted the wounds upon the deceased with a deliberate and premeditated design to effect his death and as no other legal questions are raised and none, upon our examination appear in the record, the judgment should be affirmed."

*Charles E. LeBarbier* for appellant.

*James W. Ridgway* for respondent.

O'BRIEN, J., reads for affirmance.
All concur, except MAYNARD, J., taking no part.
Judgment affirmed.