## PEOPLE v. KNAPP.

(Supreme Court, Appellate Division, Third Department. November 29, 1911.)

1. BANKS AND BANKING (§ 314*)—OFFENSES BY DIRECTORS—STATUTORY PROVISIONS.

To charge a director of a trust company with violating Pen. Law (Consol. Laws 1909, c. 40) § 297, providing that a director of a moneyed corporation who willfully does any act expressly forbidden by law, or who willfully omits to perform any duty imposed by law, is guilty of a misdemeanor, accused must have done some act as a director expressly forbidden by statute, or willfully omitted to perform a duty imposed by statute; mere violation of his oath to diligently and honestly administer the affairs of the company, as by permitting a loan of funds without sufficient security to an insolvent concern, being insufficient to show an offense.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 314.*]

2. WORDS AND PHRASES—"REQUIRED BY LAW"—"ALLOWED BY LAW"—"LIMITED BY LAW."

The expressions "required by law," "allowed by law," and "limited by law," and the like, employed in a statute, refer to statutory law.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 1, p. 348; vol. 5, p. 4167.]

3. BANKS AND BANKING (§ 61*)—UNLAWFUL LOANS—STATUTORY PROVISIONS—SCOPE.

The prohibition in Banking Law (Consol. Laws 1909, c. 2) §§ 27, 186, against loans in excess of a fixed percentage of the capital stock of the lending corporation to any person or to a director or officer, is not limited to the corporation itself, but extends to its directors, within Pen. Law (Consol. Laws 1909, c. 40) § 297, making it a misdemeanor for a director of a moneyed corporation to violate his statutory duty; criminal prosecution of a director not being prevented because the corporation's charter might be forfeited.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 61.*]

4. BANKS AND BANKING (§ 310*)—TRUST COMPANIES—LEGISLATIVE POWER.

A trust company, like other corporations, is a creature of statute, and the Legislature can prescribe what a corporation shall do, and what it shall not do.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1215; Dec. Dig. § 310.*]

5. CRIMINAL LAW (§ 13*)—WHAT MAY BE AN OFFENSE.

The doing of an act prohibited by statute or the omission to perform a statutory duty may be made indictable.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 13, 14; Dec. Dig. § 13.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. BANKS AND BANKING (§ 314*)—UNLAWFUL LOANS—STATUTORY PROVISIONS—SCOPE.

Banking Law (Consol. Laws 1909, c. 2) § 27, subd. 7, prohibiting loans to an officer, clerk, or agent of a bank without consent of the majority of the directors, relates only to banks, and not to trust companies.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 314.*]

7. INDICTMENT AND INFORMATION (§ 108*)—CONSTRUCTION—REFERENCE TO STATUTE.

Where an indictment charges violation of a statute specifically referred to, it will not be construed to charge a violation under another provision not referred to.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 284, 285; Dec. Dig. § 108.*]

8. BANKS AND BANKING (§ 61*)—OFFENSES OF DIRECTORS—UNLAWFUL LOANS.

Banking Law (Consol. Laws 1909, c. 2) § 186, subd. 11, prohibiting loans exceeding one-tenth of the lender's capital stock, to any director, directly or indirectly, without the consent of the majority of the directors, prohibits a loan to a partnership of which a director is a member without such consent, within Pen. Law (Consol. Laws 1909, c. 40) § 297, making it a misdemeanor for a director to violate his statutory duty.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 61.*]

9. BANKS AND BANKING (§ 314*)—TRUST COMPANIES—OFFENSES OF DIRECTORS—UNLAWFUL LOANS.

An indictment against a trust company director, charging that he violated Pen. Law (Consol. Laws 1909, c. 40) § 297, by willfully "omitting" to perform his legal duty, in that he willfully permitted the doing of specified acts prohibited by the banking law, is not bad, as indefinite and uncertain.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1218; Dec. Dig. § 314.*]

Houghton, Betts, and Kellogg, JJ., dissenting in part.

Appeal from Trial Term, Broome County.

Charles J. Knapp was indicted for violating Penal Law (Consol. Laws 1909, c. 40) § 297, and the State appeals from a judgment sustaining a demurrer to the indictment. Judgment below reversed, and judgment directed.

Argued before SMITH, P. J., and KELLOGG, SEWELL, HOUGHTON, and BETTS, JJ.

Frederick J. Meagher, for the People.
Mangan & Mangan, for respondent.

HOUGHTON, J. The defendant was copartner with three other individuals carrying on the business of private banking under the firm name of Knapp Bros., and was also one of the directors of the Binghamton Trust Company, which at the time of the transactions in question had a capital of $300,000, and a surplus of like amount. The indictment charges the defendant with having violated section

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

297 of the penal law (Consol. Laws 1909, c. 40), which prescribes that every director of a moneyed corporation who "willfully does any act as such director which is expressly forbidden by law, or willfully omits to perform any duty imposed upon him as such director by law; is guilty of a misdemeanor if no other punishment is prescribed therefor by law."

The indictment contains four counts.

The first count charges the defendant with the crime of violating section 297 of the penal law by willfully omitting to diligently and honestly administer the affairs of the Binghamton Trust Company, which was a duty imposed by law upon him as a director thereof. The acts charged constituting the crime are that the defendant failed, omitted, neglected, and refused to honestly and diligently administer the affairs of such trust company, in that he did on the 3d day of April, 1909, order, direct, permit, advise, counsel, and procure such trust company to lend without sufficient collateral $2,500 to the copartnership of Knapp Bros. at a time when such copartnership already owed such trust company more than $350,000, and while such copartnership was insolvent and unable to meet its obligations, all of which the defendant well knew.

The second count charges the defendant with violating the same section in willfully omitting to perform the duty imposed upon him by law as a director of the trust company by willingly permitting it to violate the provisions of section 27 of the banking law (Laws 1909, c. 10 [Consol. Laws 1909, c. 2]), in knowingly permitting the liability of the copartnership of Knapp Bros. to exceed 40 per cent. of the capital stock and surplus of the Binghamton Trust Company, in that said trust company did lend to said copartnership on the 3d day of April, 1909, the same $2,500 mentioned in the first count, while such copartnership was already indebted to such trust company for moneys loaned in an amount exceeding $240,000 (40 per cent. of capital and surplus), and that he the "said Charles J. Knapp, then and there being such director, did then and there willfully, knowingly, and unlawfully order, direct, permit, advise, counsel, and procure" the said trust company to make such loan.

The third count charges the defendant with violating the same section in willfully omitting to perform a duty imposed upon him by law in willfully permitting the trust company to violate the provisions of subdivision 11 of section 186 of the banking law by permitting it to make the same loan to defendant as director by loaning such money to the copartnership of which the defendant was a member, without the consent of a majority of the board of directors of such trust company, all of which was done through the direction, permission, advice, and procurement of the defendant.

The fourth count charges the defendant with violating the same section of the penal law by transgressing the same subdivision of section 186 of the banking law in practically the language of the third count, and with the same allegation as to what the defendant did, in that the defendant willfully permitted the trust company to make a loan exceeding in amount one-tenth of its capital stock to the defend-

ant, a director thereof, by loaning said $2,500 to such copartnership, making the aggregate amount so loaned more than $30,000.

The last three counts of the indictment close with the allegation that it was the duty of the defendant as director of the Binghamton Trust Company not to willingly permit such trust company to violate any of the provisions of law applicable to it, and that the defendant willfully and knowingly omitted to perform his duty in that regard, and that such willful omission is one for which no punishment is prescribed by law other than is prescribed by section 297 of the penal law.

On arraignment, the defendant demurred to all the counts of the indictment and to the entire indictment on the ground that the acts constituting the crime were not sufficiently stated, and that none of the counts stated facts constituting a crime, and that, if they did, more than one crime was improperly stated therein. The demurrer was sustained, and the people appeal from the judgment entered thereon.

[1] The first count is based upon the theory that it being the duty of the defendant upon assuming the office of director of the trust company to take an oath to diligently and honestly administer the affairs of such trust company, and not to knowingly violate or willfully permit to be violated any of the provisions of law applicable to such company, a willful omission to honestly and diligently discharge such duties by not preventing the loan of the funds of the company without sufficient security to an insolvent copartnership was a violation of duty imposed by law upon the defendant which made him amenable to the provisions of section 297 of the penal law. In other words, the defendant is charged with the commission of a crime because he willfully omitted to do what he said he would do when he took his oath of office as director. This same theory was evidently in the mind of the pleader in the drafting of the other counts of the indictment, although the language used is quite different.

It was a duty imposed by law upon the defendant to take an oath of office as director in a prescribed form. That duty he performed. While he swore that he would honestly and diligently administer the affairs of the trust company, and not knowingly violate or willingly permit to be violated any of the provisions of law applicable to such company, in order to charge him with a crime under section 297 of the penal law, it would be necessary to ascertain, not whether he had violated his oath, but whether he had done any act as such director expressly forbidden by law, or willfully omitted to perform any duty imposed upon him by law. The language employed by section 297 manifestly refers to any act forbidden or imposed by statute, and does not include those acts which might impose civil liability upon a director or a moneyed corporation.

[2] The expressions "required by law," "allowed by law," "limited by law," and the like, employed in a statute, refer to statutory law. Brinckerhoff v. Bostwick, 99 N. Y. 190, 1 N. E. 665. If the Legislature had intended to make a director criminally liable for violating a common-law duty, it could easily have used appropriate and pre-

cise language to that effect. In the absence of precise language, it must be assumed that violation of statutory law was meant.

We agree with the learned trial court that the indictment cannot be sustained on the theory that violation by the defendant of his oath of office constituted a crime. The demurrer to such first count was properly sustained.

[3, 4] It remains to be considered whether or not a crime was properly charged in any of the other counts of the indictment. All reference to the defendant's oath of office in such counts may properly be treated as surplusage. Section 27 of the banking law prohibits a trust company located as the Binghamton Trust Company was from loaning more than 40 per cent. of its capital stock and surplus to any person, company, corporation, or firm. More than 50 per cent. of the capital stock and surplus is charged to have been loaned to the copartnership firm of Knapp Bros. Subdivision 11 of section 186 of the banking law prohibits any trust company from loaning more than one-tenth of its capital stock "directly or indirectly to any director or officer thereof," and the same subdivision provides that no loan of any amount shall be made to such director or officer without the consent of a majority of its directors. Both of these provisions are alleged to have been violated, provided a loan to the copartnership of which defendant was a member was a loan to him as a director directly or indirectly.

The defendant urges that the prohibitions of law contained in sections 27 and 186 of the banking law are directed against the trust company itself, and not against a director as such; and hence there is no prohibition by law which a director by any of his acts could willfully violate, and that no duty is imposed upon him by law which he could willfully omit to do. We do not think this contention is sound. A trust company can be managed only by its board of directors, and the law prescribes that it shall have at least a certain number. A trust company, like all corporations, is a creature of the statute, and the Legislature has the right to prescribe what a corporation shall do, and what it shall not do. That limitation is imposed upon the command and understanding that the management shall be in the hands of a board of directors. When the corporation itself is forbidden to do an act, the prohibition extends to the board of directors and to each director. The business of banking is of the greatest moment to the state at large, and it is of the greatest importance that such business be carefully regulated by law. This it is attempted to do by the elaborate provisions respecting the carrying on of banking by private individuals, and the formation of banking corporations, trust companies, savings banks, and loan associations, and prescribing what they may do, and what they shall not do, as well as what various officers and directors may do and may not do.

The penal law in article 26 defines certain acts with respect to banking to be crimes of various degree. Section 667 of the penal law provides that a director of a corporation is deemed to have such knowledge of the affairs of the corporation as to enable him to de-

termine whether any act, proceeding, or omission of its directors is a violation of article 64 or of article 26, and, if present at a meeting at which any act, proceeding, or omission of such directors in violation of either article occurs, he must be deemed to have concurred therein unless he expressly dissents; and, if absent, he must be deemed to have concurred in such violation, unless he expresses his dissent in writing within six months. After defining various acts as crimes and prescribing their punishment, section 297 prescribes that a director of a moneyed corporation who willfully does any act as such director which is expressly forbidden by law, or willfully omits to perform any duty imposed upon him as such director by law, shall be guilty of a misdemeanor if no other punishment has been pointed out. This section is not an unusual form of prescribing a crime. Many things are prescribed or prohibited by general statute, and made penal by another and sweeping law. Section 1275 of the penal law, relating to the labor law, and section 1751, with respect to the agricultural law, are familiar examples, which have never been questioned.

The loaning of more than 40 per cent. of the capital and surplus of a trust company to any one firm or individual or corporation is a very grave matter in the conduct of a trust company. It is clearly and distinctly forbidden by law, but the offense of doing it is not specifically mentioned in the various offenses defined in article 26 of the penal law. It would be doing violence to legislative wisdom to assume that such an act by the board of directors was not intended to be punished, and that the sweeping language of section 297 was not intended to, and did not, reach a director who willfully voted at a meeting of directors to violate the law, or willfully omitted to perform the duty of voting against a violation of such law. The prohibition against loaning more than 40 per cent. imposed a duty upon the board of directors not to loan exceeding that amount.

[5] The doing of an act prohibited by statute, or the omission to perform a duty imposed by statute, may be made an indictable crime. Gardner v. People, 62 N. Y. 299; People v. Meakim, 133 N. Y. 214, 30 N. E. 828; People v. Brooks, 1 Denio, 457; 43 Am. Dec. 704; People v. Norton, 7 Barb. 477. Nor does the fact that the charter of a trust company may be taken away if it violates a provision of law prevent criminal prosecution of a director. The taking away of a charter is a mere civil proceeding. If the taking away of a charter be deemed a penalty, it is only punishment of the corporation itself, and not of a director. Even if it be deemed a punishment of the director, the Legislature has the right, not only to impose the penalty, but to declare the offense to be a crime. People v. Stevens, 13 Wend. 341; People v. Hislop, 77 N. Y. 331.

[6, 7] Counts 3 and 4 of the indictment do not come under subdivision 7 of section 27 of the banking law as suggested by defendant, for that subdivision relates only to banks, and not to trust companies, and, besides, the pleading would be confined in any event to the violation of subdivision 11 of section 186, which is specifically referred to.

[8] Subdivision 11 of section 186 prohibits the loaning of an amount exceeding one-tenth of the capital stock of the trust company to any director "directly or indirectly," and in the same sentence a loan in any amount is prohibited "to such director" without the consent of a majority of the directors. The words "directly or indirectly" refer to both classes of loans. The defendant as one of the copartners of Knapp Bros. was directly interested in obtaining the loan for his copartnership firm, and was personally liable for the debt in case the partnership property should be insufficient to repay it.

We are of opinion the statute forbade the loan to his copartnership firm as well as to himself directly. The loan was made indirectly to him through his firm. It is true that in section 142 of the banking law, relating to savings banks, a trustee or officer is prohibited from directly or indirectly "for himself, or his agent, or partner of others" from borrowing any of the funds; and it is urged that the Legislature having been so careful in its language in that section would have employed the same language in the section under consideration if it had so intended. While such argument is entitled to some weight, we think the plain language and intent of the law is to prohibit the indirect loaning of more than one-tenth of the capital stock of a trust company to a director thereof through a loan to a copartnership firm of which he is a member, and that the same rule applies to such a loan in any amount without the consent of a majority of the board of directors. Such was the plain holding in Bank Commissioners v. Bank of Buffalo, 6 Paige, 497. The language of the statute under which that decision was made was "or upon paper upon which said directors shall be responsible." A copartnership firm of which a director was a member was personally responsible only contingently and indirectly, and the language of the present statute by the use of the word "indirectly" makes the present provision of law fully as broad as the former. It is true that a copartnership is a legal entity, and differs in its legal character from an individual; but that does not change the fact that a director who is a member of a copartnership firm is indirectly interested in a loan to such copartnership. Fisher v. Murdock, 13 Hun, 485, upon which the defendant relies, simply decided that a bank prohibited from loaning to a stockholder could recover upon drafts drawn by a firm of which a stockholder was a member, accepted by another firm of which he was a member, and discounted at the request of the stockholder, where such drafts were taken in due course of business without notice. There are some expressions in the opinion to the effect that a loan to a firm of which a stockholder was a member was not a loan to the stockholder. These were unnecessary to the decision, for the charter of the bank did not make the prohibited paper void in its hands, and the knowledge of the stockholder was not imputable to the bank, and, under such circumstances, the plaintiff was entitled to recover (Atlantic State Bank v. Savery, 82 N. Y. 291; People's Trust Co. v. Pabst, 113 App. Div. 375, 98 N. Y. Supp. 1045, affirmed 190 N. Y. 534, 83 N. E. 1130); or, if not, on the note as for

money had and received (Pratt v. Short, 79 N. Y. 437, 35 Am. Rep. 531). The case of Fisher v. Murdock, supra, does not appear to have been cited in any subsequent decision, and it is quite improbable that the Legislature framed the statute in question in view of the language of the opinion in that decision.

Our conclusion is that the director of a trust company is amenable to the provisions of section 297 of the penal law if he willfully does any act as such director which the trust company itself is prohibited by statutory law from doing, or if he willfully omits to prevent the doing by its board of directors of any act which the trust company itself is prohibited from doing, and that, therefore, in this respect the allegations in counts 2, 3, and 4 of the indictment are sufficient and state facts tending to constitute a crime.

[9] Personally I am of the opinion that the demurrer to these counts was properly sustained upon the ground that the acts which the defendant is alleged to have willfully done are not set forth with sufficient certainty to constitute a proper indictment. An indictment must not only charge the crime claimed to have been committed, but must set forth the act constituting such crime, and the omission of the one or the other is fatal to its validity. People v. Corbalis, 178 N. Y. 516, 71 N. E. 106. All the acts alleged plainly charge the defendant with an omission of duty imposed by law, and not the doing of any act expressly forbidden by law. It is alleged that the defendant as a director permitted the prohibited and illegal loans to be made, and omitted to do his duty with respect to them as he was required by law to do. In charging how he did the act complained of, it is alleged in all the counts that the defendant did "willfully, knowingly and unlawfully order, direct, permit, advise, counsel and procure" said trust company to make said loans. Each of these words used implies affirmative action on the part of the defendant, except the one word "permit." If he ordered, directed, advised, counseled, and procured, then he did not omit by inaction to do his duty, but he was actively engaged in doing an act expressly forbidden by law, and was not willfully omitting to perform his duty. Section 297 clearly specifies two classes of the same crime, one which can be committed by commission and one which can be committed by omission. It seems to me utterly impossible to tell from the language employed in the indictment which one of these classes of acts the defendant is charged with having committed. The language is more pertinent to that of commission, but, upon referring to other portions of the counts, it is obvious that the defendant is charged with the class of acts involving omission. In order to apprise the defendant of what he was charged with having omitted, the indictment should have stated in what way he willfully omitted to do the act with respect to the loans which he was required to do, in that, knowing that the question of the loan was about to come before the board of directors, he absented himself, or, being present, refused to vote in the negative, or in some other way deliberately refused to attempt to prevent the illegal act on the part of the trust company in making the loans complained of. Or, if such particular-

ity is unnecessary, at least to confine the acts charged to willful omission and not couple them with the inconsistent acts ·of willful commission. Where a statute prescribes, for example, that it shall be unlawful to sell or offer to sell a certain thing, an indictment is good which charges the offering and the selling because one includes the other, and they are consistent acts and together constitute one crime (People v. Burns, 53 Hun, 274, 6 N. Y. Supp. 611); but several acts cannot be conjunctively charged in one count when they are repugnant to each other (Wharton Crim. Law [7th Ed.] § 295; 22 Cyc. 380; People v. Wise, 3 N. Y. Cr. R. 303). That the defendant as director procured and ordered and directed the trust company to make the illegal loans contrary to law is utterly inconsistent with the charge that he omitted to do the duty imposed upon him by law by preventing or attempting to prevent such illegal act on the part of the trust company.

Section 275 of the Code of Criminal Procedure requires that an indictment shall contain "a plain and concise statement of the act constituting the crime." This means that it·shall state in a plain and concise way the manner in which it is claimed the crime was committed. The purpose of this statutory requirement is, not only to protect the defendant from further prosecution for the same offense, but to apprise him of the nature and character of the offense charged, and of the facts which may be proved so as to enable him to prepare his defense. People v. Helmer, 154 N. Y. 596, 600, 49 N. E. 249. An indictment for grand larceny charging the crime to have been committed by stealing, taking, and carrying away will not sustain a conviction where the larceny was committed by obtaining possession of the property by false and fraudulent representations notwithstanding the latter be one of the ways by which larceny can be committed. People v. Dumar, 106 N. Y. 502, 13 N. E. 325. An indictment which charges that one unlawfully did sell or give away liquor on a certain Sunday is insufficient because it charges neither the one act nor the other. People ex rel. Schuler v. Schatz, 50 App. Div. 544, 64 N. Y. Supp. 127.

Nor can these counts be said to properly charge acts of commission, in that the defendant actively procured the trust company to make the forbidden loans by ignoring the word "permit," and treating it as surplusage, or by assuming that the permission was the result of action on the part of the defendant. In all the counts the .charge is that the defendant violated section 297 of the penal law by willfully "omitting" to perform the duty imposed upon him by law as a director of the trust company in that he willfully permitted the prohibited acts to be done, and in each count follows the allegation that he ordered, directed, and procured the same to be done. To my mind this statement of the act constituting the crime is so uncertain, or so inconsistent with the charge, as to make the indictment bad and the demurrer thereto proper.

My Associates, however, do not concur with me in this view, and it follows that the judgment sustaining the demurrer as to counts 2, 3, and 4 must be reversed and a judgment entered overruling the

same, and directing the defendant to further plead. All concur, except BETTS, J., who votes to overrule the demurrer as to all counts with an opinion in which KELLOGG, J., concurs.

BETTS, J. (dissenting). The defendant was indicted March 8, 1911, by the grand jury of Broome county for the crime of violating section 297 of the penal law of the state of New York, in that he willfully omitted as a director of a moneyed corporation to perform duties imposed upon him by law as such director. The indictment contains four counts. The opinion by Mr. Justice HOUGHTON very fully sets forth the indictment and the various counts thereof and the surrounding circumstances existing at the time the commission of the crime or crimes is charged. The defendant demurred to all the counts of the indictment and to the indictment on the ground that the acts constituting the crime were not sufficiently stated, and that none of the counts stated facts sufficient to constitute a crime, and that, if they did, more than one crime was improperly stated therein. The trial court sustained the demurrer to the indictment, and the case is here upon appeal by the people.

The appeal brings in question whether the oath that is required to be taken by a director of a trust company prescribes the duties of such director. Article 5 of the banking law, being sections 180–198, prescribes the method of incorporation of trust companies in this state, the powers and duties of such trust companies, and the qualification and liability of directors and other matters connected with the organization and conduct of business of such trust companies.

Section 195 is entitled "Directors," and provides that "the affairs of every such corporation shall be managed and its corporate powers exercised by a board of directors," giving the necessary numbers and method of election, provides for filling vacancies, and then contains the following:

"Each director when appointed or elected shall take an oath that he will, so far as the duty devolves on him, diligently and honestly administer the affairs of such corporation and will not knowingly violate, or willingly permit to be violated, any of the provisions of law applicable to such corporation, and that he is the owner in good faith and in his own right, of the number of shares of stock required by this section, subscribed by him or standing in his name on the books of the corporation, and that the same is not hypothecated or in any way pledged as security for any loan or debt and, in case of re-election or reappointment, that such stock was not hypothecated, or in any way pledged as security for any loan or debt during his previous term. Such oath shall be subscribed by the director making it, and certified by the officer before whom it is taken, and shall be immediately transmitted to the superintendent of banks and filed and preserved in his office."

Section 297 of the penal law, so far as material, is as follows:

"Misconduct by Directors of Moneyed Corporations.—Every director of a moneyed corporation who * * * (2) willfully does any act as such director which is expressly forbidden by law, or willfully omits to perform any duty imposed upon him as such director by law, is guilty of a misdemeanor, if no other punishment is prescribed therefor by law."

The principal question in count 1 is whether the above section 195 of the banking law in prescribing the oath to be taken by each di-

rector when appointed or elected thereby prescribes and fixes the duties imposed upon such director.

It is stated that there has been no authoritative decision as to whether such portion of such section does impose a duty upon a director. If there has been no decision, there will now be an attempt to make one. It seems to me too plain to permit of cavil that the Legislature prescribed by that section that each director will so far as the duty devolved upon him diligently and honestly administer the affairs of such corporation, and will not knowingly violate or willingly permit to be violated any of the provisions of law applicable to such corporation. This is a prescribed qualification by the statute of a director in a trust company. The oath itself must be filed with the Superintendent of Banks, where it is, of course, accessible to any person desiring to see the same. It is preliminary to becoming a statutory director. It is the credentials as we may call it, or a part of them of any person who assumes to act as a director of a trust company. It is his qualification in the method prescribed by law. He is required to so qualify himself by the solemnity of an oath. It is difficult to see why this does not prescribe the director's duties, and why by acquiescing in and taking such oath he does not subscribe thereto. Under circumstances as disclosed by this indictment, assuming the indictment to be true, the director has clearly violated his oath as director, and omitted to perform the duties prescribed by law. Section 196 of the banking law prescribes the financial liability of directors who omit to perform their duty, and it is argued here that, because that is prescribed, there cannot be any criminal liability. If the statements in the indictment are true, the financial liability of the defendant would impose no terrors upon him whatever, and would in any case be no protection to the stockholders, depositors, or other creditors of a trust company.

It is also urged that defendant is not charged solely as the indictment purports to do with omission to do his duty, but that, in fact, it alleges in all the counts that the defendant did "willfully, knowingly and unlawfully order, direct, permit, advise, counsel, and procure" said trust company to make said loans, and that because all these words, except "permit," imply affirmative action, and that because he did things forbidden by law, instead of passively not trying to stop the doing of forbidden things or doing nothing, when he might have done something, that such part of the indictment is not good because defendant is not sufficiently apprised of what he is charged with. It seems to me that making full allowance for the technicalities of criminal law, and even taking into full consideration the great amount of sophistry that passes for precedents in decisions in criminal cases, that this is a mere play upon words, and that it is going far afield to set an indictment aside. It is plainly charged that Knapp omitted to do his duty by actually doing that which he was forbidden to do. If it was Knapp's duty to go north, and an indictment charged him with omitting to perform his duty, and that he omitted it, not only by failing to go north, but that he actually and continuously went south, the indictment would be good, would it not?

If it was Knapp's duty to heat a room to 70 degrees in zero weather, and an indictment charged him with omitting to do his duty by failing to keep the room heated to 70 degrees, and that he omitted it by actually putting the fire out and carrying away all combustibles with which the fire could even be started again, the indictment would be good, even if in order to omit doing his duty he actually did something. In other words, Knapp is directly charged with omitting to do his duty by doing something—by doing directly the opposite from what he should have done.

I think the indictment is good, and that the order and judgment sustaining the demurrer should be reversed.