# SUPREME COURT — APPELLATE DIVISION — FIRST DEPARTMENT.

## July 11, 1918.

## THE PEOPLE v. DAVID ALEXANDER et al.

(1.) ATTEMPT TO COMMIT GRAND LARCENY IN FIRST DEGREE — FELONIOUS AND FRAUDULENT ATTEMPT TO OBTAIN MONEYS FROM INSURANCE COMPANY ON POLICY — JOINT INDICTMENT — APPLICATION OF PROVISION OF POLICY MAKING IT INCONTESTABLE AFTER ONE YEAR.

An indictment against M., A. and L. jointly, accusing them of an attempt to commit the crime of grand larceny in the first degree, charged that the defendants with intent to deprive an insurance company of its money, etc., and to appropriate the same to the use of the beneficiary named in the policy, feloniously, falsely and fraudulently pretended and represented that when the assured applied for a policy he did so for the sole use and benefit of his wife, and that he then promised and undertook to pay the premiums, and that when examined he was in good health and did not then have diabetes, and that a sample of urine which the assured and A. then presented to the medical examiner was a true specimen, and that L. was the lawful attorney and assignee of the beneficiary, and that there was then due and owing to him as such assignee; the amount of the policy and that they did on presenting the claim by collusion and the aid of said false and fraudulent pretenses, etc., attempt to obtain said moneys and to appropriate the same to their own use. It was then charged that the insured did not apply for the insurance in the amount stated, and that the application was not for the benefit of his wife, but was made by and for the benefit of the indicted defendants and other persons. A second count charged the crime at common law.

*Held,* that although the provision of the policy that it should be incontestable except for non-payment of premiums after one year from date rendered it incontestable at the time the proofs of death were presented and when the crime was charged as against a *bona fide* beneficiary on any ground, it is not available where the policy has been fraudulently taken out by and for the benefit of others.

(2.) SAME.

Public policy requires that such provisions of the policy be limited to legitimate policies actually taken out by the assured for the protection of his named beneficiary.

(3.) SAME—CORRECTION ONLY OBTAINED ON CRIME CHARGED AND DECLARATIONS OF CO-CONSPIRATORS.

A conviction can only be sustained for the crime for which the defendant has been accused in the indictment on which he has been tried. This is essential both to enable the accused to ·know what he is called upon to answer, and also to grant him immunity for the further prosecution for the same crime.

(4.) EVIDENCE OF CONSPIRACY—ACTS AND DECLARATIONS OF CO-CONSPIRATORS.

Where two or more are jointly charged with the crime, whether tried together or separately, a conspiracy to which the defendant on trial was a party may be shown, and then the acts and declarations of any of the co-conspirators in furtherance of the conspiracy are admissible. Hence, the court did not err in receiving evidence tending to show a conspiracy to procure the policy, and in admitting declarations of L., M. and others in furtherance thereof not made in the presence of the defendant A., although no conspiracy to procure the policy was charged in the indictment.

(5.) SAME.

Since there was no motion to dismiss either count of the indictment separately and the jury rendered a general verdict of guilty, if the evidence is sufficient under either count the conviction should be sustained.

(6.) SAME.

Under the second count of the indictment all of the facts relating to the fraudulent procurement of the policy through a conspiracy to which the defendant A. was a party, although not set out in the indictment, were admissible to show that the presentation of the claim and proofs of death, the final act in the conspiracy, constituted an attempt to commit grand larceny in the first degree by trick and device.

(7.) EFFECT OF DISMISSAL OF INDICTMENT UPON LIABILITY OF OTHER JOINT DEFENDANTS.

The fact that the indictment against M. and L. has been dismissed is no ground for reversing the conviction of the defendant A.

APPEAL by the defendant, David Alexander, from a judgment of the Court of General Sessions of the Peace in and for the County of New York, Part IV, rendered against him on the 8th day of March, 1916, convicting him of an attempt to commit the crime of grand larceny in the first degree.

*Milton M. Goldsmith* of counsel (*Max Horowitz* with him on the brief; *Goldsmith & Rosenthal,* attorneys), for the appellant.

*Robert C. Taylor, Assistant District Attorney* (*Edward Swann, District Attorney*), for the respondent.

LAUGHLIN, J.:

One Milch, the appellant and one Lustbader were jointly indicted, and the indictment accused them of an attempt to commit the crime of grand larceny in the first degree as therein stated. It then charged that Milch was the agent for the Philadelphia Life Insurance Company and authorized by it to solicit applications for life insurance, and that this appellant was engaged in the business of soliciting applications for life insurance; that on the 10th day of March, 1911, Samuel Caminsky made an application to said insurance company for life insurance through Milch and the appellant, and presented himself to one of the medical examiners of the company that day and was examined, and that on such examination the company issued its policy in which it agreed, on the terms and conditions therein recited, that on Caminsky's death it would pay to his wife, Esther Caminsky, $15,000; that Caminsky died on December 11, 1912, and thereafter and on May 8, 1913, the appellant, Milch and Lustbader, with intent to deprive the insurance company of its money, goods, chattels and personal property and of the use and benefit thereof and to appropriate the same to their own use and to the use of said Esther Caminsky, feloniously, falsely and fraudulently pretended and represented that when Caminsky applied for the insurance he did so for the sole use and benefit of his wife, who had an insurable interest in his life, and that he had then promised and undertaken to pay the premiums, and that when examined on the 10th day of March, 1911, he was in good health and did

not then have diabetes, and that a bottle of urine which he and the appellant then presented and delivered to the company's medical examiner was a specimen of his urine then voided, and that Lustbader was the lawful attorney and assignee of said Esther Caminsky, and that there was then due and owing to him as such assignee the amount of the policy, and that they did then and there on said 8th day of May, 1913, by color and by aid of said false and fraudulent pretenses and representations, feloniously and fraudulently attempt feloniously and fraudulently to obtain said moneys from the insurance company with intent to deprive and defraud it thereof and to appropriate the same to their own use. It then charges the facts to be that Caminsky did not apply for insurance in such amount and that the application was not for the benefit of his wife, but was made by and for the benefit of the indicted defendants and other persons, and that said Caminsky did not promise, undertake or agree to pay the premiums, but that they and others agreed to and did apply for the insurance, and agreed and undertook to pay the premiums, solely for their own use and benefit and with the intent and for the purpose of speculating and gambling on the life of Caminsky, and that they did not nor did any of them have an insurable interest in his life, and that Lustbader was not such attorney or assignee, and that there was not then due or owing to him from the company any sum whatever, and that when Caminsky was so examined he was not in good health and then had diabetes, and that the sample of urine was not his, and that the said pretenses and representations were in all respects utterly false and untrue, as the indicted defendants and each of them well knew when they were made. The second count charges the crime at common law, viz., an attempt at grand larceny in the first degree on said 8th day of May, 1913, by attempting by force and arms to steal, take and carry away the same property of the insurance company specified in the first count.

The first point made by the appellant is that there is a failure of proof of the crime charged in the indictment, and that there was a material variance between the crime attempted to be charged and the one for which the indictment was found. The learned counsel for the People concedes that it was essential to the validity of the indictment that the day on which it was claimed that the crime was committed should be specified, and that both counts of the indictment specified that day as May 8, 1913, which is the day on which formal proof of the death of Caminsky, which occurred on the 11th of December, 1912, was presented to the company by Lustbader on blanks furnished to his attorneys at their request by letter of April 12, 1913, notifying the company of Caminsky's death. The proofs of death consist of a verified statement by Lustbader stating, among other things, that he made the claim under a power of attorney and assignment from Esther Caminsky, the beneficiary judicial to the rights of the defendant. They are more numer-named in the policy; that Caminsky died December 11, 1912; that his health first began to be affected September 25, 1912; that the immediate cause of death was diabetes-arterio-sclerosis and that Caminsky had gangrene of the leg requiring amputation and that he paid the last premium April 23, 1912, at the request of Caminsky; a statement from the attending physician to the effect that Caminsky first showed symptoms of his final illness on September 25, 1912, the day the physician who was attending him at the time of his death was first called, and that his last visit was December eleventh; that diabetes was the predisposing cause of the last illness, and that Caminsky died from arteric-scleroatic gangrene amputation; a statement from the undertaker and by a friend of the decedent both with respect to the death, identity and burial of Caminsky. There was no statement in the proofs of death with respect to any of the alleged false and fraudulent representations charged in the indictment, and there was no evidence that any other representa-

tion was made to the insurance company on said eighth day of May by any of the indicted defendants or any other person in their behalf. The policy was issued on the 25th day of March, 1911, and it provided that on due proof of Caminsky's death, if the policy was then in force, the company would pay $15,000 to Esther Caminsky, wife of the insured, if living, and if not, to his personal representatives or assigns. It provided, among other things, as follows: " This policy shall be incontestable, except for non-payment of premium, after one year from date. * * *. Self-destruction, while sane or insane, or death in consequence of the violation of law, within one year of the date hereof, are risks not assumed by the company under this policy."

Counsel for the appellant contends that in these circumstances the only material representation in the proofs of death was with respect to the death, which concededly occurred at the time specified, and that any representations with respect to the cause of death are immaterial, for the reason that the company was then only entitled to due or satisfactory proof of death, and the authorities so hold. (Buffalo Loan, Trust & S. D. Co. v. K. T. & M. M. A. Assn., 126 N. Y. 450; Grattan v. Metropolitan Life Ins. Co., 80 id. 281; O'Reilly v. Guardian Mut. Life Ins. Co., 60 id. 169; Insurance Co. v. Rodel, 95 U. S. 232.) The only false representations claimed by the People to have been expressly contained in the proof or death are the statements with respect to the time Caminsky showed symptoms of his last illness, which it is claimed constituted representations that he did not show symptoms before, and the statement that Lustbader's claim was by virtue of a power of attorney and an assignment from Esther Caminsky. Lustbader did have two powers of attorney from her and one contained an assignment of the claim, and she concededly signed that about two weeks after the policy was issued, but she testified that it was then in blank and not filled out and that she then signed several papers relating to the insurance in blank and did not sign or execute

a paper at any other time. The appellant testified that the one she admitted having signed and which bears date the fourth of May was executed about the time it bears date and owing to the fact that the first had been mislaid; but the former purports to have been a power of attorney only, while the latter purports to assign the claim as well. The evidence connecting appellant with the proofs of death shows that he had for a number of years solicited insurance, and that, as was customary in such cases, he volunteered to procure the statements from the attending physician, the undertaker and friend of the decedent, on the blanks furnished by the insurance company for that purpose. It is not claimed that there was any misrepresentation in the statement by the undertaker. The only claim with respect to misrepresentation as to the statement made by the friend is as to the length of time he had known decedent, and with respect to that there is no evidence that the alleged misstatement was in any manner influenced by appellant. The only misstatement claimed in the statement made by the attending physician is with respect to the time when the decedent first showed symtoms of his last illness, and that, so far as appears, was filled in by the attending physician without suggestion or inducement from the appellant. The People, therefore, failed to show that the appellant was in any manner responsible for even any of the immaterial false or fraudulent statements contained in the proofs of death.

In support of the indictment, the People were permitted to prove the making of the alleged false representations, not on May eighth as charged in the indictment, but when the application was made by Caminsky for the insurance; or in other words, not by or in connection with the proofs of death, but by or in connection with the application for the policy of insurance. The evidence was sufficient to warrant a finding that the policy was procured through fraud on the part of the indicted defendants and that the sample of urine was not voided by

Caminsky, and that appellant knew that such was the fact when it was presented to the medical examiner of the company. The appellant testified that he had no interest in the policy and that the only consideration he received was commissions of from $185 to $190 for assisting in procuring it. There is evidence, however, sufficient to warrant a finding to the contrary and that a gross fraud was perpetrated on the company and that appellant was one of the principal actors therein. Caminsky was known to the family to be a very sick man. He had been suffering from diabetes for several years. Mrs. Caminsky's brother, Michael Goodman, conceived the idea of obtaining the insurance. He spoke to his brother Abe, who was an insurance agent representing one of the old line companies, and Abe said he could not procure it but that he would send another agent to him, and he sent appellant. Thus appellant came into the case innocently, but he soon knew that Caminsky was not a good risk and that he could not pass an honest examination. There is competent evidence to the effect that he employed a physician to examine Caminsky preliminarily; that the urine was found to contain from five to eight per cent sugar and Caminsky was found to be suffering from arterio-sclerosis, and the physician so informed him and also stated to him that Caminsky would not live more than a year or two; that with this information and with knowledge that neither Caminsky nor his wife was instrumental in applying for the insurance, that neither of them was to pay any part of the premium and that they only consented to have an application made for a policy for $5,000, and on the express understanding that Michael Goodman would pay the premium, that the beneficiary was only to participate to a comparatively small extent in the proceeds of the policy, that the bulk of such proceeds was to be divided between the Goodmans or them and himself or another or others, none of whom had any insurable interest in the life of Caminsky, excepting that Michael Goodman had made a claim that

Caminsky owed him $25 — the appellant, in collusion with the Goodmans, with the local agents of the company who transacted business in the name of Kaplan & Co., which was a firm in name only and represented a branch of the insurance business carried on by defendant Milch, and with the local medical examiner of the company, filled out the application for a policy of $15,000 insurance containing misrepresentations with respect to Caminsky's business and state of health, and arranged for an examination at which he was present and at which, through his connivance, a sample of urine was delivered to the medical examiner as that of Caminsky which was not his, with the result that the company was imposed upon and deceived into issuing the policy. Kaplan & Co. delivered the policy to appellant and he went to Michael Goodman with it and obtained one-third of the premium, which was $1,137.30, and then delivered it to Abe Goodman, from whom appellant says he received the other two-thirds of the premium in part by an allowance for part of his commissions which he agreed to pay over to Abe, but according to the latter the appellant was to pay one-third of the premium and to have an interest in the policy. The appellant testified that the beneficiary was to receive one-third of the proceeds of the policy and the Goodmans the balance; but the evidence warranted the inference that appellant knew from the start that Lustbader was to share in the proceeds of the policy, and in view of the evidence with respect to the execution of the powers of attorney and assignment to Lustbader and appellant's activity in assisting in preparing the proofs of death, the inference is also warranted that appellant was personally interested in the collection of the policy. The second premium was paid by the Goodmans and Lustbader in equal shares, and shortly thereafter, for reasons not made entirely clear, Caminsky's blank notes and the power of attorney purporting to have been executed in May were returned to the Caminskys and the policy was delivered to Caminsky, who on

May 2, 1912, forwarded it to the company by mail with a letter signed by him and the beneficiary, requesting that it be canceled and that the company refund part of the premiums paid. That the company refused to do and returned the policy and it was subsequently delivered by the beneficiary to her brother-in-law Sequeira, from whom evidently the district attorney received it. There is no evidence that Lustbader ever had possession of the policy.

The general rule is that fraud vitiates any contract, and if this policy had provided that the company would not contest it for actual fraud in procuring it the agreement would be void as against public policy; but it was competent for the parties to agree upon a reasonable time, after which the company would waive the defense with respect to the original issue of the policy, and the clause such as that in the policy in question is in the nature of a short statute of limitations and is given effect accordingly, and, therefore, the policy at the time the proofs of death were presented and when the crime is charged was incontestable as against the beneficiary on any ground, and a defense to an action thereon by her could not have been successfully interposed even on proof of actual or willful fraud. (Wright v. M. B. L. Assn., 118 N. Y. 237; Teeter v. United Life & Accident Ins. Assn., 11 App. Div. 259; affd., 159 N. Y. 411; Matthews v. American Central Ins. Co., 9 App. Div. 339; affd., 154 N. Y. 449; McCormack v. Security Mut. Life Ins. Co., 161 App. Div. 33, 39; Vetter v. Massachusetts Nat. Life Assn., 29 id. 72; Drews v. Metropolitan Life Ins., Co., 79 N. J. L. 398; Murray v. State Mutual Life Ins. Co., 22 R. I. 524; Reagan v. Union Mutual Life Ins. Co., 189 Mass. 555; Great Western Life Ins. Co. v. Snavely, 206 Fed. Rep. 20; Welch v. Union Cent. Life Ins. Co., 108 Ia. 231.)

The appellant contends on the authority of People v. Jaffe (185 N. Y. 502, 19 N. Y. Crim. 277) and People v. Teal (196 id. 372, 24 N. Y. Crim. 84) that since this policy was incontesta-

ble, the crime of grand larceny could not be committed by receiving or enforcing collection of the proceeds thereof, and that since the attempted acts, if successful, would not have constituted the crime of grand larceny, the attempts cannot constitute a crime. The learned counsel for the People argues that this limitation in the contract of insurance with respect to the period during which the policy might be contested is not binding on the People. Counsel for the appellant replies that public policy forbids that an insurance company should be permitted, after soliciting insurance on this condition, to attempt under threat of criminal prosecution, to avoid or to compromise its liability, as it is claimed, under some evidence tending to show it, the insurance company in question was accustomed to do; and he argues, evidently on the theory that there might have been an indictment for procuring the policy, that to give effect to the terms of the policy in a criminal prosecution the same as in a civil action will not result to the disadvantage of the People, any more than does any statute of limitations with respect to prosecutions for crime. The argument of counsel for appellant on that point would merit serious consideration if Lustbader, whom appellant was assisting in attempting to collect on the policy, were the beneficiary named therein for whose benefit these provisions of the contract were inserted, or an *innocent* assignee of the beneficiary *for value;* but he was neither and, therefore, he was not entitled to the benefit of those provisions. (Clement v. N. Y. Life Ins. Co., 101 Tenn. 22, 42 L. R. A. 247.) Public policy, I think, requires that such provisions of a policy be limited to legitimate policies actually taken out by the insured for the protection of his named beneficiary, and should not be deemed intended to apply to a policy fraudulently taken out by and for the benefit of others, as in the case at bar. The jury were warranted in finding, and doubtless did find, that the alleged powers of attorney and the assignment to Lustbader which appellant claims to have procured from Mrs. Caminsky

were also fraudulent and void as to her and that, therefore, appellant knew that Lustbader had no title and had only parted with one-third of the second premium, and also that Lustbader was a party to the original conspiracy. It is quite clear, therefore, that in so far as Lustbader was not attempting to collect for the beneficiary, as to whom or as to whose interest *only* the policy was incontestable, he was attempting to steal the money, and appellant was knowingly assisting him.

The learned counsel for the appellant concedes that his client might have been indicted, and perhaps convicted, for his participation in procuring the policy, but he contends that the crime was complete when the policy was issued and is not the crime with which he is charged in the indictment. The learned counsel for the People concedes that the appellant is not charged with a crime for assisting in obtaining the policy and that the crime charged in both counts is attempting to steal money from the insurance company, and that the presentation of the proofs of death was the final step in consummation of the original fraudulent scheme under which the company was deceived and induced to issue the policy. It is, of course, elementary law that a conviction can only be sustained for the crime of which the defendant has been accused in the indictment on which he has been tried (Code Crim. Proc., § 275, subd. 2; Id. § 284, subd. 6; People v. Knapp, 147 App. Div. 436, 26 N. Y. Crim. 448; People v. Dumar, 106 N. Y. 502; People v. Helmer, 154 id. 596, 13 N. Y. Crim. 1; People v. Cohen, 148 App. Div. 205, 8 N. Y. Crim. 263), and that is essential both to enable the accused to know what he is called upon to answer and also to grant him immunity from a further prosecution for the same crime. The appellant duly raised the point by motions to dismiss the indictment, and there was a variance between the charge and the evidence, and excepted to the denial thereof. It is contended in behalf of appellant that no conspiracy to procure the policy is charged in the indictment and that, therefore, the

court erred in receiving evidence tending to show such a conspiracy and in admitting declarations of Lustbader, Milch and others in furtherance thereof, not made in the presence of the appellant. That contention is without merit. (See People v. McKane, 143 N. Y. 455, 465, 9 N. Y. Crim. 377; People v. Storrs, 207 id. 147, 155, 29 Crim. 511; People v. Cassidy, 213 id. 388, 32 N. Y. Crim. 442; People v. Becker, 215 id. 126, 148, 33 N. Y. Crim. 193), and it is well settled that where two or more are jointly charged with a crime, whether tried together or separately, a conspiracy to which the defendant on trial was a party may be shown, and that then the acts and declarations of any of the co-conspirators in furtherance of the conspiracy are admissable. (People v. Cotto, 131 N. Y. 577; People v. Peckens, 153 id. 576, 586, 12 N. Y. Crim. 433; Code Crim. Proc., §§ 292, 391.)

There was no motion to dismiss either count separately, and the jury rendered a general verdict of guilty. If, therefore, the evidence is sufficient to sustain the conviction under either count, the conviction should be sustained. (People v. Davis, 56 N. Y. 95; Pontius v. People, 82 id. 345; People v. Sullivan, 173 id. 122, 128.) Under the second count, all of the facts relating to the fraudulent procurement of the policy through a conspiracy to which appellant was a party, although not set out in the indictment, were admissible to show that the presentation of the claim and proofs of death, the final act in the conspiracy, constituted an attempt to commit grand larceny in the first degree by trick and device. (People v. Miller, 169 N. Y. 339, 351, 352, 16 N. Y. Crim. 281; People v. Dumar, 106 id. 502, 511, 8 N. Y. Crim. 263; People v. Laurence, 137 id. 517, 522; People v. Neff, 122 App. Div. 135; affd., 191 N. Y. 210, 10 N. Y. Crim. 231; People v. Gottschalk, 66 Hun, 64, 10 N. Y. Crim. 254, affd., 137 N. Y. 569; People v. Evans, 69 Hun, 222, 10 N. Y. Crim. 469, affd., 143 N. Y. 638; People v. Sumner, 33 App. Div. 338, 13 N. Y. Crim. 318; affd., 161 N.

Y. 652.)   Therefore, it is not necessary to decide whether the alleged variance between the first count and the evidence would preclude a conviction thereunder for all the evidence received was admissible under the second count and consequently the appellant has not been prejudiced.

The appellant was the first of the defendants to be tried. After his conviction, Milch was tried and convicted under the *first* count only, but this court reversed the conviction on the ground that he did not have a fair and impartial trial and ordered a new trial and Mr. Justice SCOTT, in a concurring opinion, expressed the opinion that he had been convicted for the original fraud in procuring the policy, which was a crime with which he was not charged, and also intimated that the policy being incontestible, the charge of attempting to collect it set forth in the indictment did not constitute a crime. (People v. Milch, 178 App. Div. 875.)   That decision, the People argue, indicates that the majority of the court must have been of opinion that a conviction might be had, for otherwise a new trial would have been futile.   That, however, does not follow.   We were impressed with the gravity of the case and with the effect on the security of insurance policies if a decision were made that such a conspiracy might result in a legal taking of the spoils owing to the incontestable feature of the policy, and we deemed it best to order a new trial to the end that the People might be at liberty to proceed as the prosecuting officer might deem advisable.   It is stated in the points for the appellant, although not in the record, and is not denied, that the indictment against Milch and Lustbader has since been dismissed; but if so that is no ground for reversing the conviction of the appellant.   (People v. Livingstone, 47 App. Div. 283, 14 N. Y. Crim. 422; People v. Tompkins, 186 N. Y. 413, 417, 20 N. Y. Crim. 410.)

We have examined all other errors assigned and find none prejudicial to appellant or that merits consideration in this

opinion. The appellant had a fair and impartial trial and his counsel so conceded. The rulings of the learned trial court were clear and impartial. The only possible prejudice to appellant was in the reception of evidence of the acts and declarations of co-conspirators before the appellant was sufficiently connected therewith; but he was ultimately sufficiently shown to have been a party to the fraud from its inception and to have participated therein throughout. There might be room for argument that there came a time when Milch abandoned the conspiracy and notified the company of the fraud and thereafter was acting, not in furtherance of the conspiracy, but in behalf of the company to obtain a settlement; but that point was not raised on the trial and is not specifically taken on the appeal. The subsequent acts and declarations of Milch were not objected to on that ground, nor was a motion made to strike them out or to have the jury disregard them on that ground. Moreover, there was a basis for the contention made by the People that Milch in so doing was still acting in furtherance of the conspiracy to obtain something from the company for the conspirators. The appellant had unfortunately been stricken with total blindness before the trial, and doubtless for that reason the jury recommended him to the mercy of the court, and the court suspended judgment.

It follows that the conviction should be affirmed.

DOWLING, SMITH, PAGE and MERRELL, JJ., concurred.

Judgment affirmed.