J. Irwin Shapiro, J.
Thirteen of the 17 defendants named in this indictment — • Ferguson, Harris, Ellis, Stewart, West, McPherson, Samuels, Taylor, Smith, Fernandez, Haynes, and the two Kouroumas — have interposed demurrers in writing to discrete counts of the indictment by which they are respectively charged with various crimes. Counts one and four charge all defendants with the crimes of advocacy of criminal anarchy and conspiracy to commit the crime of criminal anarchy; the fifth count charges 13 of the defendants with the crime of con *825 spiracy to commit the crime of arson in the third degree; and the other 14 counts of the indictment charge different defendants with substantive crimes such as permitting premises to be used for assemblages of anarchists and the unlawful possession of firearms.
Defendants Ellis, West, Smith, and Fernandez, in separate demurrers, and the two Kouroumas in a single demurrer, demur to the first and fourth counts of the indictment upon the ground that the facts stated therein do not constitute a crime and that the indictment does not conform with the requirements of sections 275 and 276 of the Code of Criminal Procedure, and that (except for Ellis) those counts do not comply with sections 278 and 279 of the code. Defendants West, Smith and Fernandez also demur to the fifth count of the indictment (charging conspiracy to commit arson) upon the same ground asserted as to the first and fourth counts, and defendants Smith and Fernandez also demur upon the ground that the Grand Jury did not have authority to inquire into the crimes charged. In separate demurrers, defendants Ferguson, Harris, Stewart, McPherson and Samuels demur to the respective substantive counts for possession of firearms with which they are charged (Ferguson, seventh count; Harris, tenth and eleventh counts; Stewart, twelfth and thirteenth counts; McPherson, sixteenth count; and Samuels, seventeenth count) upon the ground that the indictment as to those counts violates sections 278 and 279 of the Code of Criminal Procedure; and defendants Taylor and Playnes, also by separate demurrer, demur to the entire indictment upon the ground that it does not conform with the requirements of sections 278 and 279 of the Code of Criminal Procedure.
Section 275 of the Code of Criminal Procedure provides that an indictment shall contain:
“ 1. The title of the action, specifying the name of the court to which the indictment is presented, and the names of the parties;
“2. A plain and concise statement of the act constituting the crime, without unnecessary repetition.”
Section 276 of the Code of Criminal Procedure provides that the indictment shall be signed by the District Attorney, and may be substantially in the form set forth in that statute. Sections 278 and 279 provide, generally, that, except for specific situations therein set forth, the indictment must charge but one crime and in one form. Objections that an indictment does not conform to the requirements of sections 275 and 276 or of 278 and 279 of the code must be taken only by demurrer. (People v. *826 Conroy, 97 N. Y. 62, 70; People v. Klipfel, 160 N. Y. 371, 374.) And section 323 of the Code of Criminal Procedure provides, so far as pertinent here, that:
“ The defendant may demur to an indictment, or any count thereof, when it appears upon the face thereof, * *
“ 2. That the indictment does not conform substantially to the requirements of sections two hundred seventy-five and two hundred seventy-six; or
“ 3. That more than one crime is charged in the indictment within the meaning of sections two hundred seventy-eight or two hundred seventy-nine; or
1 ‘ 4. That the facts stated do not constitute a crime ’ ’.
It has been said that the purpose of an indictment is to identify the charge against a defendant so that his conviction or acquittal may prevent a subsequent charge for the same offense and also to notify him of the nature and character of the crime charged against him so that he may be enabled to prepare a defense. (People v. Farson, 244 N. Y. 413, 417; People v. Williams, 243 N. Y. 162,165.) To fulfill this function, and to satisfy the requirement in section 275 that the indictment contain “ A plain and concise statement of the act constituting the crime,” an indictment must not only charge the crime claimed to have been committed, but must also set forth the act constituting such crime, and the omission of the one or the other is fatal to its validity. (People v. Knapp, 147 App. Div. 436, 446, affd. 206 N. Y. 373; also see People v. Corbalis, 178 N. Y. 516, 520-521; People v. Kane, 161 N. Y. 380, 386; People v. Klipfel, 160 N. Y. 371, 374, supra; People v. Willis, 158 N. Y. 392, 396; People v. Peckens, 153 N. Y. 576, 586.) In requiring a “ statement of the act constituting the crime,” the statute evidences a desire to protect the defendant from further prosecution for the same offense and also to inform the accused of the substantive act which may be proved under the indictment so as to enable him to prepare his defense. (People v. Dumar, 106 N. Y. 502, 510; also see People v. Corbalis, supra, pp. 520-521.) Thus, an indictment which charges a defendant with a crime merely in the language of the statute but does not contain a statement of the particular acts alleged to have been committed by defendant which constituted the crime does not comply with the requirement of section 275. (People v. Schultz, 301 N. Y. 495, 497; People v. Zambounis, 251 N. Y. 94, 96.)
In view of the several demurrers, it is in this posture of the law that the indictment must be examined.
*827 CHARGES OF CRIMINAL ANARCHY AND CONSPIRACY TO COMMIT THAT CRIME
As stated, the first and fourth counts of the indictment charge all defendant’s respectively with having committed the substantive crimes of advocacy of criminal anarchy and conspiracy to commit that crime. The first count charges, in three separate paragraphs and in the precise language of the statute (former Penal Law, § 161), that defendants committed the crime of advocacy of criminal anarchy as follows:
‘ ‘ The defendants * * % acting in concert * * * on or about and between October 1,1965 and June 19,1967 * * e by word of mouth and writing did advocate, advise and teach the duty, necessity and propriety of overthrowing organized government by assassination of the executive officers of the government and by force and violence.
“ That in pursuance an in furtherance thereof, the defendants * * # did print, publish, edit, issue and did knowingly circulate, distribute, and display papers, documents, books and other written and printed matter containing and advocating, advising and teaching the doctrine that organized government should be overthrown by force, violence or any unlawful means.
“ That in pursuance and in furtherance thereof, the defendants * * * did organize and helped to organize and did become members of and did voluntarily assemble with groups and assemblies of persons formed to teach and advocate the doctrine that organized government should be overthrown by force, violence or any other unlawful means.”
The fourth count charges defendants with the crime of conspiracy to commit the crime of advocacy of criminal anarchy in that, between the dates mentioned in the first count, they “ knowingly, wilfully, corruptly and unlawfully conspired, confederated and agreed with each other * * * to commit the crime of advocacy of criminal anarchy,” and that in furtherance of that conspiracy they committed nine enumerated overt acts.
Section 161 of the former Penal Law, insofar as it is applicable to the indictment herein, provides that the crime of advocacy of criminal anarchy is committed by any person who:
‘ ‘ 1. By word of mouth or writing advocates, advises or teaches the duty, necessity or propriety of overthrowing or overturning organized government by force or violence, or by assassination of the executive head or of any of the executive officials of government, or by any unlawful means; or,
‘ ‘ 2. Prints, publishes, edits, issues or knowingly circulates, sells, distributes or publicly displays any book, paper, document, *828 or written or printed matter in any form, containing or advocating, advising or teaching the doctrine that organized government should be overthrown by force, violence or any unlawful means; or,
‘ ‘ 3. Openly, wilfully and deliberately justifies by word of mouth or writing the assassination or unlawful killing or assaulting of any executive or other officer of the United States or of any state or of any civilized nation having an organized government because of his official character or any other crime, with intent to teach, spread or advocate the propriety of the doctrines of criminal anarchy; or,
‘ ‘ 4. Organizes or helps to organize or becomes a member of or voluntarily assembles with any society, group or assembly of persons formed to teach or advocate such doctrine
Defendants contend that the first, fourth, and fifth counts of the indictment do not conform with section 275 of the Code of Criminal Procedure in that those counts do not contain a statement of the acts allegedly committed by defendants constituting the crimes charged sufficient to inform defendants what they are called upon to defend, and that the charges as contained in those counts will not prevent a subsequent charge for the same offenses. There is merit to their contention.
The first count is merely a reiteration of the statutory language contained in section 161 of the former Penal Law. No particulars are given as to what form the “ advocating, advising and teaching of the duty and propriety of overthrowing organized government” took; to whom it was directed; which executive officers of which government were to be assassinated; nor the nature and character of the force and violence which was advocated and taught to fulfill the duty of overthrowing organized government. This, manifestly, does not inform the defendants of the acts which will be proven at the trial in support of the indictment, and certainly not as to what they will be called upon to defend. Moreover, with no restriction as to the acts which may be proven under the wording of the indictment, the indictment is of such a character that it will not prevent the filing of a subsequent charge for the same offense during the same period but for acts other than those established upon the trial.
This is also true of the fourth count, which charges conspiracy to commit the crime of advocacy of criminal anarchy. All that is charged is the generalization that the defendants conspired together to commit the crime of advocacy of criminal anarchy. No facts are stated as to what form such conspiracy took or what *829 acts the defendants conspired to commit which would constitute a conspiracy to commit criminal anarchy. Though nine overt acts which were allegedly committed in the furtherance of that conspiracy are set forth, they do not sufficiently identify the conspiracy charged so as to inform the defendants of the acts constituting the crime to the end that they may prepare a defense or prevent a subsequent charge for the same offense, particularly since a charge of conspiracy can be sustained by the proof of the commission of overt acts other than those alleged in the indictment so long as one of the overt acts alleged is established (People v. Glubo, 5 A D 2d 527, 543? affd. 5 N Y 2d 461). The omission from this count of the required specification of the acts committed by defendants which constitute the crime charged is pointed up by section 276 of the Code which sets forth substantially the form an indictment should take:
“ The grand jury of the [County] * * *, by this indictment, accuse A. B. of the crime of * * *, committed as folíolos:
“ The said A. B., on the-day of-, 18 — , at the town * * * of--in this county (here set forth the act charged as an offense).” (Emphasis supplied.) In addition, there is no identification of the organized government which the defendants taught and advocated should be overthrown. Under the indictment it could be the United States, the State of New York, any other State, or even a foreign power. If the United States Government was intended, this State lacks jurisdiction to prosecute for such crime. This is also true if the advocacy and effort of the defendants were directed toward some foreign state or government. The overriding fault in this lacuna is that the defendants cannot prepare to defend against proof of facts of advocacy of criminal anarchy directed towards any number of organized governments and that proof of such action as to the organized government of Cuba (used here for illustrative purposes only) would not preclude a subsequent charge of advocacy of criminal anarchy aimed at the organized government of the United States, or any other organized government. •
Similarly, there is no identification in the second paragraph of the first count of the ‘1 papers, documents, books and other Avritten and printed matter containing and advocating, advising and teaching the doctrine that organized government should be overthrown by force, violence or any unlaAvful means.” This is a fatal defect. In People v. Zambounis (251 N. Y. 94, supra), an indictment Avhich charged that the defendant unlawfully possessed, with intent to sell, lewd and obscene printed matter, which *830 printed matter was not specifically identified or described, was held to be insufficient as a matter of law. The Court of Appeals there said (p. 96): “ This is insufficient. The name and nature of the publication is not given, neither a description of the printed matter; the dates, even, of the publication of the article, are not specified. It is not necessary to set forth in detail the obscene matter, but it is necessary to describe it or identify it with some exactness. The defendant should be informed of the nature of the charge against him and of the act constituting it, not only to enable him to prepare for trial, but also to prevent him from again being tried for the same offense. On the above information the defendant would have to resort to the testimony or the record of the evidence to show the crime for which he was tried, whereas the indictment or the information alone must be sufficient to show this fact.” (Cf. People v. McGuire, 5 NY 2d 523; People v. Schultz, 301 N. Y. 495, supra; People v. Siefert, 4 A D 2d 41.)
Although the foregoing is dispositive of the question as to whether the first and fourth counts of the indictment are demurrable, there remains another objection to those counts to be considered. Not all of the elements of the crime of advocacy of criminal anarchy are contained in section 161. In an opinion rendered simultaneously herewith (N. Y. L. J., Jan. 16, 1968, p. 17, col. 8), I denied a motion by defendants to dismiss the indictment upon the claim that sections 160 and 161 of the former Penal Law (advocacy of criminal anarchy) are unconstitutional in three respects and that the prosecution of the crime of advocacy of criminal anarchy has been pre-empted by the .Federal Government under the Smith Act (U. S. Code, tit. 18, § 2385). In that opinion, I wrote that I am bound by the holdings of the Court of Appeals in the case of People v. Epton (19 N Y 2d 496) that sections 160 and 161 are constitutionally valid and that the Smith Act does not preclude a State prosecution for advocacy of criminal anarchy of a State government. The holdings in Epton were not of first impression.
In Gitlow v. New York (268 U. S. 652), sections 160 and 161 of the former Penal Law were held by the United States Supreme Court to be constitutional. The late revered Justices Holmes and Brandéis dissented in that case upon the narrow ground that the guarantee of freedom of speech contained in the First Amendment is circumscribed and invaded by an interdiction against the expression of a political philosophy advocating the overthrow of the present government unless there is a clear and present danger that such result will come to pass (p. 672). In Dennis v. United States (341 U. S. 494) the Supreme Court, in holding the Federal Smith Act (U. S. Code, tit. 18, § 2385) con *831 stitutional, stated that the dissenting view in Gitloio had come to be the prevailing view of the law and that, consonant with ‘ the duty of the federal courts to interpret federal legislation in a manner not inconsistent with the demands of the Constitution ’ (p. 501), it could and did read into the Smith Act the unexpressed essential element that there be a clear and present danger of such eventuality in order to save that statute from the condemnation of unconstitutionality. The court, based upon decisions which came after Gitloio, also read into the Smith Act the essential requirement of intent to overthrow the government in the advocacy of such concept in order to preserve its constitutionality (pp. 499-501).
Later, the Supreme Court in Pennsylvania v. Nelson (350 U. S. 497) held that advocating criminal anarchy and the violent overthrow of organized government as defined by the Smith Act was a crime pre-empted by the Federal Government and that the latter superseded State governments in the prosecution thereof. However, it was also held in Nelson (p. 500), which holding was followed in DeGregory v. New Hampshire Atty. Gen. (383 U. S. 825, 826) and Uphaus v. Wyman (360 U. S. 72, 76-77), that the pre-emption and suppression decreed in that case does not ‘1 affect the right of States to enforce their sedition laws at times when the Federal Government has not occupied the field and is protecting the entire country from seditious conduct.”
As I pointed out in that opinion, the three additional essential elements above adverted to, though not explicitly contained in those sections, have been expressly read into them by our Court of Appeals in People v. Epton (19 N Y 2d 496, 505-507, supra).
It has been held that compliance with the provision of section 275 of the Code of Criminal Procedure that a plain and concise statement of the act constituting the crime “ ‘ requires that all the elements which enter into the definition of an offense must be stated in the indictment ’ or the pleading is fatally defective.” (People v. Riforgiato, 19 A D 2d 132, 134-135; also see People v. Englese, 7 N Y 2d 88, 86-87; People v. McGuire, 5 N Y 2d 523, 525-526, supra; People v. Hartwell, 166 N. Y. 361, 367; People v. Siefert, 4 A D 2d 41, supra.)
Defendants argue that counts one and four, dealing with advocacy of criminal anarchy, are demurrable in that none of the three elements which were read into section 161 by Epton is pleaded in either count. This is ineluctably so. These elements are not pleaded, and since ‘ A judicial interpretation of a statute, having once been made, becomes as much a part *832 of the enactment as if incorporated into the language of the act itself ” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 72, p. 106), these additional essential elements of the crime of advocacy of criminal anarchy, as established by Epton (supra) must be pleaded in an indictment if it is to be sustained.
In addition to the foregoing deficiencies, the indictment is also insufficient because it does not allege that it was the government of New York State which the defendants advocated overthrowing. As pleaded, the indictment can clearly be read as a charge that the advocacy was directed against the Federal Government or against both the Federal and the State government. In such a case, the Federal Government would have exclusive jurisdiction of the crime. In this posture of the matter, it is not necessary to reach or determine whether there is an absence of pleading of a “clear and present danger” and an intent, in advocating the overthrow of the government, that this ultimate aim be achieved.
The foregoing applies with equal force to the fifth count, which charges conspiracy to commit the crime of arson. That count charges that the defendants named therein, between the same dates alleged in the first and fourth counts, “knowingly, wilfully, corruptly, and unlawfully conspired, confederated, and agreed with each other and with persons known and unknown to the grand jury to commit the crime of arson in the third degree,” and that in furtherance of that conspiracy four enumerated overt acts were committed. What arsons the defendants conspired to commit, or what particular structures or vehicles they intended unlawfully to set afire is not set forth. Under such an indictment, if it were established that the conspiracy was to burn structures A, B, and 0, there would be nothing to preclude a subsequent charge against defendants of conspiracy during the same period of time to burn down structures X, Y, and Z. Also, such an indictment does not inform the defendants that what will be proven is a conspiracy to put the torch to structures A, B, and C, and thus they are manifestly unable to prepare a defense. It is obvious, therefore, that this fifth count is as defective as counts one and four in failing to set forth a short statement of the acts constituting the crime.
From what has been said, it follows that the demurrers of defendants Ellis, West, Smith, Fernandez, Michelle Kourouma and Horike Kourouma to the first, fourth, and fifth counts of the indictment, as applicable, are sustained, with leave to the District Attorney to represent the matters to the same or another Grand Jury.
*833 Claims Under Sections 278 and 279 of the Code of Criminal Procedure
Defendants Ferguson, Harris, Stewart, McPherson, Samuels, Taylor, and Haynes have interposed separate demurrers upon the ground that, aside from the portion of the individual demurrers directed to the specific substantive count involving each particular defendant, the indictment does not conform to the requirements of sections 278 and 279 of the Code of Criminal Procedure.
Section 278 provides that “ The indictment must charge but one crime and in one form except as in the next section provided.” The next section, section 279, so far as pertinent here, provides that: ‘ ‘ When there are several charges * * * for two or more acts or transactions connected together or constituting parts of a common scheme or plan, or for two or more acts or transactions constituting crimes of the same or similar character, instead of having several indictments or informations, the whole may be joined in one indictment or information in separate counts, and if two or more indictments or informations are found in such cases, the court may order them to be consolidated ”.
The joining of the different crimes here charged in one indictment, but in separate counts, is in direct conformity with sections 278 and 279 of the Code of Criminal Procedure. It is obvious that all the crimes charged are “ connected together or [constitute] parts of a common scheme or plan,” having their genesis in the conspiracy to commit the crime of advocacy of criminal anarchy charged in the fourth count. (People v. Luciano, 277 N. Y. 348; People v. Vario, 165 Misc. 842, 849.) In fact, in the fourth count, which charges all of the defendants with the crime of conspiracy to commit the crime of advocacy of criminal anarchy, it is alleged that all the defendants acted in concert and agreed with each other to commit the crime and that the overt acts which they committed were that they, “ acting in concert, formed the Jamaica Rifle and Pistol Club to be used as a cover and as a front for illegal possession of weapons,” and that they, also acting in concert, obtained an amount of rifles and other firearms, issued literature containing plans for pulling down high tension wires and using deadly force against the police, and obtained pipes and gunpowder for making explosives.
The aforesaid demurrers upon the ground that the indictment violates the provisions of sections 278 and 279 of the Code of Criminal Procedure are overruled.
*834 The Substantive Counts
No memorandum of law has been submitted attacking the sufficiency of the counts of the indictment charging defendants Ferguson (seventh count), Harris (tenth and eleventh counts), Stewart (twelfth and thirteenth counts), McPherson (sixteenth count), and Samuels (seventeenth count) "with the-substantive crimes of unlawful possession of fire-arms. Those defendants rest solely on the pro forma wording of the demurrers to those counts. Those counts suffer no deficiency rendering them demurrable, and the demurrers interposed to them are overruled.