Robert P. Kennedy, J.
Defendants Teeter and Kropman have been convicted after a jury trial of the crime of conspiracy in the first degree (Penal Law, § 105.15). At the close of the People’s case and again at the close of proof the defendants moved for trial orders of dismissal of the conspiracy charge. Decision was reserved both times and the matter was submitted to the jury.
The conspiracy count of the indictment under which they were tried alleges that the defendants "did agree with one or more persons, to wit, one another and also Ronald Cantaben, Anthony Cotsworth, and others”, to have certain named persons murdered. It further alleges that in furtherance of the conspiracy "one or more of the conspirators did commit overt acts including but not limited to the following”. The indictment then sets forth two payments of money to Ronald Cantaben. These are the only alleged overt acts spelled out in the indictment.
One of the major problems, apparent from the above, is that the only overt acts alleged are payments from one coconspirator to another. It is alleged that the first payment was "a down payment for the murder” and the other "to be used as *534 payment for the murder”. Case after case has held that, citing only one: "Payment of money to a co-conspirator to secure his agreement to the conspiracy is regarded as an act merely cementing the conspiracy and not as an overt act committed in furtherance thereof. (People v Hines, 284 N.Y. 93.) However, if the money is paid to a co-conspirator to be delivered to another in payment of the services constituting the principal crime, such payment is held to constitute an overt act. (People v. DeCabia, 8 AD2d 825, affd. 7 NY2d 823.)” (People v Wolff, 24 AD2d 828.)
Here, the indictment alleges payment to a coconspirator, not to be paid to another for services but for the coconspirator and, therefore, would not constitute an overt act such as is required by law.
People v DeCabia (10 Misc 2d 923), submitted by the prosecution in support of its position is easily distinguishable. In DeCabia, money was given to a coconspirator "to be used by him for the proposed bribe”, in other words, to pass on to someone else.
In Hines (284 NY 93), one of the overt acts alleged was that the defendant was paid $500 to $1,000 a week for performing his part in the conspiracy, for committing criminal acts toward fulfilling the purpose of the conspiracy.
Here, it is alleged that one of the coconspirators received two payments for performing his part in the conspiracy: to commit murder, the purpose of the conspiracy.
While it is true, as the People maintain, that the Court of Appeals and the Appellate Division in Hines (supra), did not address themselves to the trial court’s ruling that such payment to Hines was merely something done as part of the agreement to cement the conspiracy (People v Hines, 168 Misc 453, 457), it is sufficient for our purposes to point out that the Appellate Division, Fourth Department, held that that was the rule in Wolff (24 AD2d 828, supra).
The People argue that, in addition to setting forth the two payments, the indictment says that the overt acts committed included such payments but were "not limited to” such payments. They claim, therefore, that even if the two payments did not constitute overt acts they could show other overt acts to satisfy the legal requirements. While it is true that on the trial the People can prove overt acts in addition to those alleged, they must in all events prove the overt acts alleged (People v Ferguson, 55 Misc 2d 823, 829). While it might well *535 be that the journey taken to show the "hit man” where the intended victims lived could be considered an overt act (People v Rivera, 281 App Div 911; affd 306 NY 588), it cannot fill the gap left by the failure to prove an overt act alleged in the indictment, if such a gap exists. I say "if such a gap exists” because if Cantaben was not a coconspirator then the alleged payments to him by one who was would constitute an overt act such as would satisfy the requirements of section 105.20 of the Penal Law.
The more perplexing arguments were those presented on the motions to dismiss relating to the role of Cantaben and Cotsworth. Both of these men were undercover police officers. On the one hand, defendants argue that because they are named in the indictment as coconspirators, that’s it, they must be coconspirators. This is no more true than it would be to say that because the indictment alleges that the defendants were coconspirators they are coconspirators. Whether any of them are or are not is a question of fact.
Defendants’ other argument on this point is that because the two men are police officers they could not have had the requisite criminal intent to enter into a conspiracy to murder and were, therefore, not coconspirators (People v Bauer, 32 AD2d 463) and that, therefore, by removing them there could be no conspiracy. This overlooks the fact that even were this the case, that would still leave the two defendants as alleged coconspirators. An acceptance of this argument of defendants would nullify their argument made about the lack of an overt act. Again, however, the question as to whether or not the two officers had the requisite criminal intent was for the jury. Unfortunately, there have been incidents where police officers did have such intent.
In view of the question in regard to the lack of an allegation of an overt act, the People’s position on this point is equally puzzling. The People argue that the police officers were coconspirators notwithstanding the lack of criminal intent on their part. It is the People’s claim that section 105.30 of the Penal Law applies. I have found one case in point: People v Cardosanto (84 Misc 2d 275). That case supports the People’s position and holds that section 105.30 of the Penal Law is applicable and that a police officer lacking criminal intent can be a coconspirator. I respectfully disagree. It seems to me that that section relates to a person’s lack of criminal intent due to the lack of mental capacity or unawareness precluding the forma *536 tion of a criminal intent, not to a situation where, as here, we are dealing with a person with full possession of his mental faculties and a full awareness of the situation. If this section were applicable, then all it takes to constitute a conspiracy in the first degree is one person with criminal intent combining with a police officer without such. If this is the law, we are, in effect, raising the crime of solicitation to a class B felony when the highest grade given that crime by the Legislature (Penal Law, § 100.10) is a class D felony.
It is difficult to follow defendants’ claim of prejudice by the court’s reserving decision on the motions for trial orders of dismissal. They say they didn’t know how to proceed. The answer appears to be that they would proceed as though the motions had been denied and as in fact they did, among other things, raising every affirmative defense set forth in the Penal Law, excepting only justification. Reserving decision not only gives the court time for in-depth study and consideration of the motion without delaying the trial but also gives the People recourse from an erroneous ruling (United States v Wilson, 420 US 332), recourse now not otherwise available to them (United States v Jenkins, 420 US 358).
The argument by Kropman’s attorney on his claim of prejudice by the court’s denial of his application to take exception to the court’s charge out of the presence of the jury seems to confuse exceptions and requests. He merely stated his exceptions which were noted. The burden of his argument dealt with requests to charge and these were in fact made out of the presence of the jury.
I, therefore, find that whether or not Cantaben and Cots-worth were coconspirators is a question of fact and that if the jury finds that they were not, then the overt acts. alleged in the indictment were sufficient. Although nothing which occurred after the motions were made or the verdict was rendered was or could be considered when deciding the motions, the jury was instructed that if they found that Cantaben and Cotsworth were coconspirators, payment of money to them by another coconspirator under the circumstances of this case would not constitute an overt act such as is required by the law. Implicit in the verdict of guilty, under such an instruction, was a finding that the two officers were not coconspirators and that the defendants were.
Defendants’ motions for trial orders of dismissal and to set aside the verdicts are, therefore, in all respects denied.